CHARLES J. QUINBY, Appellant, *v.* EDMUND H. CARHART et al., Respondents.

In an action upon an alleged contract on the part of defendants to pay a note executed by plaintiff, the complaint alleged, among other things, and it was admitted, that plaintiff was a merchant in the habit of purchasing goods in New York city for the southern market, and in such business had for many years purchased goods of defendants on time and consigned them for sale to southern parties, plaintiff being allowed ten per cent discount from the price of the goods. Defendants set up as a counter-claim a sale by defendants to plaintiff, in pursuance of this arrangement, of a bill of goods sent to a Charleston firm. Plaintiff, however, claimed that, prior to this sale, the arrangement had been ended, and that the sale was to the Charleston firm. It appeared that an action was brought for defendants' benefit against the Charleston firm, in which they claimed, and gave evidence tending to show, that the sale was directly to that firm. *Held,* that, while the attitude of defendants in that action was strong evidence against them here, they were not estopped by it, as plaintiff was not a party.

Plaintiff claimed on appeal that, it being held that he was the purchaser, he was entitled to the ten per cent on the purchase-price. No such claim was made or referred to on trial. *Held,* that the relief asked for could not be given here.

(Argued April 13, 1892; decided April 26, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of January, 1891, which affirmed a judgment in favor of defendants, entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover $2,523.70 for an alleged violation by defendants of an agreement to pay a note given by plaintiff.

The following is the opinion in full:

" The sole question in this case is whether the plaintiff became legally bound to pay the defendants for goods shipped by them to a mercantile firm in Charleston, South Carolina, in the year 1884. He contends that he stood, at most, as a guarantor for the payment of the goods, and as his agreement rested wholly in parol he claims that it was void and not binding upon him under the Statute of Frauds.

" The defendants, on the contrary, claim that the goods were sold to him and shipped at his request to the Charleston firm and that, therefore, there was an original liability on his part to pay for the goods. The evidence in reference to the matter is very conflicting, and it is quite difficult to determine from it precisely what the truth is. The learned trial judge, in his charge to the jury, said: ' I confess to you that the evidence is very conflicting. It is impossible to reconcile it. It is almost impossible to reconcile one witness' testimony, some parts with others. But such as it is you must consider it and try to come to some conclusion in the matter.' But the issue between the parties is greatly narrowed by the allegation in the plaintiff's complaint that he ' was a merchant and in the habit of purchasing goods in the city of New York for the southern market, and for many years had purchased large quantities of goods on time from the firm of Whitford & Co. (the defendants), and consigned the same for sale to parties in Charleston, in the state of South Carolina,' and substantially that that course of business continued to March 5, 1884. These allegations were admitted by the answer, and there was oral evidence to confirm them. It must, therefore, be taken as established by the pleadings and proofs that for many years prior to the 5th day of March, 1884, the plaintiff purchased

goods upon his own credit from the defendants and shipped them to the Charleston firm; that he paid the defendants for such goods; that they allowed him a discount of ten per cent from the price of the goods; that he sold or consigned the goods to the Charleston firm and obtained reimbursement from it with a profit of ten per cent.   He claims and gave evidence tending to show that on the fifth day of March he went to the defendants and put an end to that arrangement; that he then paid them the balance due from him for goods thus sold and shipped to the first day of February which, according to the prior arrangement was one of the semi-annual pay days, and that he substantially notified them that he would no longer be responsible for goods shipped to the Charleston firm.   This evidence on the part of the plaintiff the defendants contradicted by evidence on their part.   They gave evidence tending to show that they did not on the fifth day of March receive any such notification from the plaintiff and that the goods thereafter were shipped just as they had been before and under the same arrangement.   So we think the jury could find upon the evidence that the goods were sold to the plaintiff and upon his credit.

"The fact that the goods were charged to the Charleston firm on defendants' books is not conclusive against their claim that they were actually sold to the plaintiff.   They gave some evidence tending to show that they were thus charged upon the plaintiff's request, and that at some subsequent time they were entered in the account against him by an understanding between the parties.

"Subsequent to the sale of these goods the defendants made a general assignment for the benefit of their creditors, and the assignee brought an action against the Charleston firm alleging a sale to them and seeking to recover from them the amount due after crediting upon the price of the goods the money deposited with the defendants by the plaintiff, which is now claimed in this action.   It appears that the assignee during the pendency of that action was discharged; that after his discharge the further prosecution of the action was conducted for or on behalf of the defendants, and that on the trial of that action they gave evidence tending to show that the sale

of the goods was directly to the Charleston firm. It is quite clear that the claim in that litigation between the assignee and the Charleston firm was inconsistent with the claim they made upon the trial of this action. But their attitude in that action does not conclude them in this. It is conceivable and possible that they actually sold the goods to the plaintiff and having delivered them to the Charleston firm that they should seek to recover the purchase-price from that firm. But the plaintiff cannot have the benefit of the adjudication in that action, as he was not a party thereto. The attitude of the defendants in that action was a circumstance strongly bearing upon the issues in this action. The doctrine of the election of remedies does not apply, and as to the plaintiff the defendants are not estopped by their statements or action in the Charleston litigation. They may have taken a false position in that action. But there is no rule of law prohibiting them from taking what they claim to be the true position in this. What they said and did in that action bears upon their good faith and credit in this, and can have no other effect, and while it has a strong tendency to bring discredit upon their contention in this action, still upon all the very conflicting evidence there remained questions of fact for the jury, and they having found in favor of the defendants, we are concluded by their verdict.

"After the principal charge of the trial judge, the defendants' counsel requested him to charge the jury 'that the allegation in the complaint, that this was a purchase of goods from Carhart, Whitford & Company, and the admission in the answer that that was a purchase is conclusive on that question, and the jury cannot consider any other evidence — that that is absolutely conclusive,' and the judge so charged. The plaintiff's counsel now complains of this charge as erroneous. The language of the judge was not strictly accurate, and could be so construed as to embody error. There was no allegation in the complaint that the plaintiff purchased of the defendants the goods now in controversy and the judge could not have meant that there was. If he had meant that, and such had been his construction of the complaint, he should have nonsuited the plaintiff, or directed a verdict for the defendants, and nothing would have been left for litigation. He had pre-

viously stated accurately what the allegations in the complaint were, and both parties and the jury must have understood the charge to have reference to the purchase of goods before March 5, 1884, as alleged in the complaint. If the counsel for the plaintiff supposed that there was danger that the jury would be mislead by the language used, he should have asked to have it made more explicit. The judge did not err in his view of the law that an allegation made in the complaint and admitted in the answer absolutely concluded the parties in the action.

"The claim of the plaintiff that he was in any event entitled to recover ten per cent upon the price of the goods under his contract with the defendants is unfounded. If he had paid for the goods and had thus performed his contract, he would have been entitled to the allowance. But he did not claim this ten per cent upon the trial. There was no ruling upon it, and it was in no way mentioned there. He can, therefore, claim no relief in reference thereto upon this appeal.

"This case was so tried and the evidence was so confused and conflicting that we do not feel certain as to the real merits of this controversy. It was incumbent upon the plaintiff here to point out some error prejudicial to him. In this we think he has failed, and the judgment should be affirmed, with costs."

*William P. Fiero* for appellant.

*Ira D. Warren* for respondents.

EARL, Ch. J., reads for affirmance.
All concur.
Judgment affirmed.