THE EMPIRE MANUFACTURING COMPANY, Respondent, *v.* CHARLES Z.
MOERS and SALI B. MOERS, Appellants.

*Sale of merchandise — election to confirm the sale evidenced by its use — effect, as an
estoppel, of a suit thereafter brought by the vendee to rescind the sale.*

Where a corporation, a vendee of merchandise, discovers immediately after the
receipt of the merchandise that it is of an inferior quality and advises the ven-
dor of that fact, and that the vendee proposes to send it back, but the vendee
still uses more than half of it in its business, it is then too late to rescind
the sale; and the fact that a suit is brought by an officer of the vendee, not
acquainted with such action of the corporation in using the merchandise, alleging
that the sale has been rescinded, to restrain the vendor from negotiating the
note of the vendee given for the purchase price of the merchandise, does not
operate to estop the vendee from claiming in an action brought by it against
attaching creditors of the vendor for the conversion of such merchandise,
that the vendee has title thereto — the title having vested in the vendee under
its election to accept the merchandise, as evidenced by its use, prior to the
time of bringing the suit to rescind the sale.

APPEAL by the defendants, Charles Z. Moers and another, from a
judgment of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Cayuga on the 24th day of
June, 1897, upon the decision of the court rendered after a trial
before the court without a jury at the Cayuga Trial Term.

The plaintiff commenced an action against the sheriff of Cayuga
county for acts done by him in virtue of an attachment and an exe-
cution issued upon a judgment in favor of the defendants in this
action. Subsequent to the commencement of this action the defend-
ants were substituted in place of the sheriff as defendants in this
action. The action is for the conversion of a quantity of composition
metal which was levied on in the city of Auburn under an attachment
against L. Tyler Pratt in favor of the defendants herein, while the
composition metal was in the possession of the plaintiff. Subse-
quently, the defendants herein recovered a judgment, and on that
judgment an execution was issued against L. Tyler Pratt, and the
sheriff levied upon and sold the composition metal; and this
action is to recover for the conversion of the same. The prin-
cipal question in the case is whether the metal was the property of
the plaintiff at the time of the conversion, or whether the plaintiff
was estopped from asserting title to the property in itself. The

value of the property alleged to have been converted was fixed by a stipulation, and the trial court ordered a recovery of the defendants in the sum of $580 with interest thereon from September 25, 1896 (the date of the conversion). Judgment has been entered for that sum in favor of the plaintiff, with the costs of the action. A general exception was filed to the decision made by the trial court and an appeal has been taken to this court from the judgment entered upon the decision.

*E. C. Aiken,* for the appellants.

*D. L. Hurlbut,* for the respondent.

HARDIN, P. J.:

Plaintiff is a foreign corporation wholly engaged in carrying on a manufacturing business in this State. In the month of February, 1896, a negotiation was had between the plaintiff and Pratt, of Boston, for the purchase of a quantity of composition metal, and a purchase was consummated by telephone and letter, and the metal was shipped from Boston to the plaintiff and reached the city of Auburn about March 2, 1896, the invoice having been transmitted on the twenty-sixth of February, for 25,338 pounds, at the agreed price of $1,900.35. Immediately after the arrival of the composition the plaintiff discovered that it was "spongy and looked very black." The plaintiff executed and delivered its promissory note to Pratt for $1,900 on the twenty-ninth of February, bearing date the second day of March. On the tenth of March the plaintiff commenced to use the metal and continued its use every day until March twenty-second. The plaintiff discovered that the metal would not make good castings and was of an inferior quality and wrote Pratt to that effect on the thirteenth of March, and again wrote to him on the seventeenth of March stating that it had made a test of the metal and found it of a poor quality, and proposed to send the metal back to him. However, the plaintiff still continued to use it until the twenty-second of March as its own property. The plaintiff made use of 14,569 pounds, using up all but 10,769 pounds. The plaintiff alleges that it continued to use the metal after

discovering that it was poor because they had no other metal and did not want to close their foundry and stop, and thereby sustain a heavy loss. On the 17th of March, 1896, Pratt made an assignment, and on the twenty-first of March, Mills, one of the officers of the plaintiff, was in Boston and learned of Pratt's failure and then commenced an action against Pratt and his assignee to restrain the transfer of the note given for the metal, alleging that the metal was not of the quality purchased, and that the plaintiff had rescinded the sale and offered to return the metal. Mills had not been in Auburn since March eleventh, and did not know of the use of the metal by the plaintiff after that day, and did not discover that the metal had been continuously used by the plaintiff after the eleventh of March until he returned from Boston. While Mills was in Boston he saw Mr. Chaplin, assignee, and agreed upon terms of settlement of the Boston suit. On the 9th of May, 1896, Babson & Hamburger were appointed assignees in insolvency of Pratt, and on May sixteenth Babson settled the case with the plaintiff, agreeing to discontinue the Boston suit, and that the metal should remain the property of the plaintiff. On the twenty-second of May the defendants in this action, having obtained an attachment in their action against Pratt, caused the sheriff to levy upon the metal as the property of Pratt. At the time the sheriff attempted to levy the attachment upon the property he was told that the metal belonged to the plaintiff, and he was forbidden to make a levy on the same. According to the terms of purchase the plaintiff was bound to approve of the quality of the metal within a reasonable time after an opportunity to inspect the same, and in case it found that the quality was not such as purchased, it was its right to then promptly rescind the sale and return or offer to return the metal, or to retain the metal and use it as its own property. The evidence given at the trial warrants the conclusion that the plaintiff did not promptly, and within a reasonable time after discovering the alleged defects, repudiate the purchase. On the contrary, it affirmed the sale by continuing to use the property, and thus deprived itself of the power to make a rescission of the contract; and its attempt to do so by means of its suit in Boston was futile.

In *Brown* v. *Foster* (108 N. Y. 387) the general rule was stated to the effect " that one who seeks to reject an article as not in accord-

ance with the contract, must do nothing after he discovers its true condition inconsistent with the vendor's ownership of the property." That case was referred to in *Chambers* v. *Lancaster* (3 App. Div. 217), and it was said in the latter case: "The use of the machines for the purpose of their business, after the trial had shown that they were defective, was a conclusive election to accept. In this respect the present case resembles closely that of *Brown* v. *Foster* (*supra*), and the decision in that case that the plaintiff, by using a sawmill after knowledge that it failed to comply with the contract, had accepted it and was precluded from subsequently returning it, controls the disposition of this case."

In Benjamin on Sales (§ 703) it is said: "When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them, for receipt is one thing and acceptance another. *But receipt will become acceptance if the right of rejection is not exercised within a reasonable time,* or if any act be done by the buyer which he would have no right to do unless he were owner of the goods."

It is quite obvious from the evidence that, if the plaintiff had continued to prosecute the suit in Boston upon an assertion of a rescission of the contract of purchase, it would have failed in that action. It had gone too far in the use and acceptance of the property to warrant it in maintaining an action for rescission of the contract.

Nor can that action be regarded as an estoppel in favor of these defendants, as these defendants were not parties, nor privies of the parties, to the transaction out of which the estoppel is claimed to have arisen. The defendants were strangers to the contract of sale and to the action based by the plaintiff upon or in repudiation of that sale. Before the defendants had taken any action in the affairs of the plaintiff, they were informed by the plaintiff of the truth in respect to the ownership of the property, and that the plaintiff claimed to be the owner of it, and that it forbade the defendants or their sheriff to interfere with it.

The position taken by Mr. Mills in Boston in bringing the suit against Pratt or his assignees was not intended to influence the defendants in this action.

In *Howe Machine Company* v. *Farrington* (82 N. Y. 129) it was

said: "The mistake in stating the amount of Davis' indebtedness was not calculated to mislead the defendant as to any matter disclosed to the agent. The fact that it did affect his conduct to his injury did not create an estoppel, unless the connection between the statement and the omission to obtain security were so proximately related that the agent knew, or ought to have known, that the defendant's conduct in that respect would naturally result from the statement made. This cannot be said in respect to the transaction in question." And the rule as to estoppels was quoted in that case in the following language: "Equitable estoppels are applied for the prevention of fraud and are ordinarily based upon some action or declaration of a party intended to influence the action of others, and which it would be inequitable to allow to be gainsaid or controverted, because acted upon, and loss would ensue if a different position should be taken," which doctrine was laid down and applied in *Board of Supervisors* v. *Otis* (62 N. Y. 96) and quoted with approval.

The defendants here cannot have the benefit of any assertion in the Boston action, nor of any adjudication that might have been made in it. That action was ultimately dismissed, and the facts which are disclosed by the evidence here indicate that it could not have been maintained, and the rule laid down in *Quinby* v. *Carhart* (133 N. Y. 579) applies. At page 582 the court said: "The plaintiff cannot have the benefit of the adjudication in that action, as he was not a party thereto. * * * The doctrine of the election of remedies does not apply, and as to the plaintiff, the defendants are not estopped by their statements or action in the Charleston litigation. They may have taken a false position in that action. But there is no rule of law prohibiting them from taking what they claim to be be the true position in this."

There is no evidence in the case to indicate that the plaintiff knew or intended that any one should act on the faith of the representations made by Mills in the Boston action.

In *Maguire* v. *Selden* (103 N. Y. 642) it was said: "An estoppel may not be based upon statements made to a third person, and not made to be communicated to the one claiming the estoppel."

Of course we are not considering the effect of the Boston suit as between the plaintiff here and Pratt, or his assignees. We have a

case where there was a prior election made by the plaintiff to accept the property under the contract with Pratt, and that acceptance, coupled with the contract to purchase, vested complete title in the plaintiff to the property in question.

In *Kinney* v. *Kiernan* (49 N. Y. 164) it was said : " The institution by a party of a fruitless action which he has not the right to maintain will not preclude him from asserting the rights he really possesses." The doctrine of that case was cited and applied in *McNutt* v. *Hilkins* (80 Hun, 239).

There is no allegation of any fraud or fraudulent practice in the contract of purchase made by the plaintiff.

The complaints of the composition made in the early days of March, and a statement of disinclination to accept the same do not, as matter of law, show a non-acceptance. In *Brown* v. *Foster* (*supra*) it was said : " The intent of the vendee in using the property after discovery of defects, may be gathered from his acts as well as his words. * * *" And such acts may be taken as a substantial proof of an acceptance for use.

We are of the opinion that the plaintiff was the owner of the property mentioned in the complaint and in the decision, at the time the sheriff, the defendants' agent, converted the same; and that, therefore, the plaintiff was entitled to maintain the action for such conversion.

(2) The plaintiff was carrying on the manufacturing business wholly within this State.

In *People ex rel. Tiffany* v. *Campbell* (144 N. Y. 171) it was said : " The plain object of the exemption of manufacturing corporations, carrying on manufacturing within this State, from taxation, by the act of 1880, was the encouragement of production, and it was assumed that the employment of capital and labor in the business of manufacture here was a just ground for the exemption." (See *People ex rel. Jewelers' Circular P. Co.* v. *Roberts*, 155 N. Y. 1; S. C., 49 N. E. Rep. 248.)

It was shown upon the trial, by the certificate of the Comptroller, that " The Empire Manufacturing Company was entered as a corporation wholly engaged in manufacturing in the State of New York," and the certificate concludes by saying, viz., " and is, therefore, exempt from the provisions of chapter 240 of the Laws of 1895."

FOURTH DEPARTMENT, MARCH TERM, 1898.     [Vol. 27.

(3) We have looked at the exceptions taken during the progress of the trial and upon the adjourned day, and are of the opinion that they present no error, and that there was no abuse of discretion requiring us to interfere with the rulings made by the trial judge. We think the judgment should be sustained.

All concurred.

Judgment affirmed, with costs.