Branson v. Turner.

BRANSON v. TURNER, *Appellant.*

1. **Warranty of Chattels**: OBVIOUS DEFECT. Though a defect be obvious a vendor may warrant against it; especially where the nature and extent of the disorder is lurking, and may reasonably be supposed to be more within the knowledge of the vendor than the vendee. Thus, where the subject of a sale was a yoke of oxen, one of which had a sore on his neck, and the vendor gave the assurance that "that don't hurt him; it is almost well," and the vendee took them on this assurance, without seeing them; *Held,* that this amounted to a warranty.

2. ——: BREACH OF WARRANTY. Where there is a breach of warranty, the vendee may return the property and rescind the contract within a reasonable time, or he may retain it and when sued for the purchase money plead a total or partial failure of consideration.

3. ——: ——: RECOUPMENT. Notwithstanding a breach of warranty, if the property is not returned the vendor may maintain an action for the purchase money, but the vendee will be entitled to recoup the amount of the diminution in value.

4. ——: ——: BURDEN OF PROOF. In an action on a contract of sale with warranty to recover the purchase money, the burden is not on the vendor to show fulfillment of the warranty, but on the vendee to show a breach if he alleges it.

5. ——: ——: FRAUD. To make out a breach of warranty, it is not necessary to show that the representations of the warrantor were fraudulent or that they actually deceived and misled the warrantee.

6. **Expert Testimony.** Whether or not a sore on the neck of an ox renders him unfit for beef, is a proper question for expert testimony.

7. **Warranty.** Where a vendor of oxen warranted them fit for either beef or work, unfitness for either, is a breach of the warranty, whether the vendee designed to use them for that purpose or not.

*Appeal from Gasconade Circuit Court.*—Hon. A. J. Seay, Judge.

Reversed.

*Belch & Silver* for appellant.

*Burchard & Read* for respondent.

Philips, C.—This action was begun in a justice's court, and tried on appeal in the circuit court, to recover the purchase money for a yoke of oxen sold by respondent to appellant. The whole negotiation seems to have been conducted by correspondence, and is evidenced by the following letters:

Woodland, Mo., January 27th, 1878.

Mr. Turner : A few lines in regard to you about some steers I have to sell. I have one of the finest yoke of steers almost in Gasconade county, and the finest matches, big and very fat. I have been stall-feeding for some three or four months, and will sell them cheap for beef or work steers. They will weigh 1,200 pounds. One of them has a sore under his neck down close to his jaw, but that don't hurt him; it is most well. I will pay your expenses up here if you will buy the steers. Come up and see them, and there are some more steers here for sale, but you find none better for work than mine. Yours,

Thos. J. Branson.

Morriston, Mo., February 2nd, 1878.

Mr. T. J. Branson, Woodland, Mo.:

*Dear Sir :* If your cattle are as good as represented, you can deliver them to me about the 25th of this month. I will pay you cash on delivery, $75. Answer by return mail and oblige. Yours,

C. C. Turner.

On this letter from Turner, Branson delivered the cat-

tle. Branson owned a saw mill, and there was evidence that he bought them to use in hauling at this mill; and that he used them once. There was also evidence tending to show that the sore on the steer's neck was material, affecting the value of the steers. Appellant offered to prove by experts that the sore on the neck rendered him unfit for beef; which proof the court excluded. The parties lived thirty miles apart. About two weeks after the delivery of the cattle, Turner started them back to Branson, though it does not appear that they were delivered to him.

On this state of the case plaintiff asked the following instructions, which the court gave :

1. If there was a contract of sale, the terms of which were contained in Branson's letter of January 27th, 1878 together with Turner's answer of February 2nd, 1878, and you are satisfied that plaintiff Branson, by himself or agent, performed all the conditions of such contract on his part, then he is entitled to recover the price agreed on, if you believe the cattle were as represented in plaintiff's letter to defendant.

2. If in pursuance of a letter from defendant containing a proposal to purchase the cattle in controversy, the plaintiff, or his agent, delivered said cattle to defendant at the time and place mentioned in said letter, or had such cattle at such time and place ready to deliver, and offered to deliver them to defendant, then defendant is bound to pay the price agreed upon, whether he accepted and received them or not, provided that the cattle were such as they were represented to be in plaintiff's letter to defendant of January 27th, 1878.

3. If the jury believe that the plaintiff, or his agent, delivered to defendant the cattle in controversy, and that they were accepted and received by him, they will find for plaintiff the price agreed upon, unless they further believe that plaintiff made false and fraudulent representations in regard to the cattle which actually deceived and misled defendant to his injury.

4.   If the defendant Turner used the oxen in controversy as his own, or exercised over them the rights of ownership after they were taken to Morriston by plaintiff's brother for the purpose of delivery, these are circumstances from which you may infer they were accepted and received by defendant.

Defendant asked the following instruction, which was given :

1.   The jury is instructed that the terms of the contract are, that the plaintiff, by his letter dated January 27th, 1878, offered to sell to defendant a yoke of cattle, almost the best in Gasconade county, and the finest matches, big and pretty fat, and offered to sell them for beef or work steers, weighing about 1,200 pounds, one of them with a sore under his neck, that the sore doth not hurt him, and is almost well, and the defendant agreed to purchase the same provided they were as good as represented, and that the defendant was not under this contract bound to receive the same unless the steers came up to this description, and it devolves on the plaintiff to prove this, and in the absence of this evidence the jury will find for defendant.

The defendant also asked for the following instructions, which were refused :

2.   It devolves on the plaintiff to prove to your satisfaction that the steers were as represented by plaintiff, and in the absence of such proof, you must find for defendant.

3.   If the jury believe from the evidence that the sore on the neck was not nearly well, but was liable to continue as a sore, then the plaintiff cannot recover, although the same did not materially injure him as a work ox.

4.   If the sore on the neck of one of the steers decreased the value of the same for any purpose, then the plaintiff cannot recover on his contract.

5.   Although the jury may believe from the evidence that plaintiff agreed to sell defendant a yoke of oxen on the conditions mentioned in his letter, and deliver the same

to the defendant, and that defendant afterward found that the oxen were not as represented and returned the same to the plaintiff, and the plaintiff received the same without objection, and still holds them, then this is a rescission of the contract, and the plaintiff cannot recover.

There was a verdict and judgment for plaintiff for the whole purchase money, and the defendant appealed to this court.

The questions presented for determination are the giving and refusing of instructions, and the exclusion of evidence.

The negotiation between the parties to this contract having been conducted in a written correspondence, without

1. WARRAN TY OF CHATTELS: obvious defect.

a view of the steers, reference to the letters must control its meaning. The vendor, after representing the condition of the animals, said he was willing to " sell them cheap for beef or work steers." Had there been nothing more, and the vendee had received and retained them for two weeks with the sore on the neck as an obvious defect, I should be inclined to hold that this defect was not such a breach of the alleged warranty, as, under such a state of facts, would entitle the vendee to return the steers. But a vendor may warrant against an obvious defect. Benjamin on Sales, (3 Ed.) §§ 616 *et seq*. Especially is this so, where the nature and extent of the disorder is lurking, and may reasonably be supposed to be more within the knowledge of the vendor than the vendee. *Thompson v. Botts*, 8 Mo. 710. Branson in his letter went further. He was not content with calling attention to the sore on one of the steers, but gave the assurance that " that don't hurt him; it is most well." This amounted to a warranty. Turner, in answer to this, said: " If your cattle are as good as represented you can deliver them." By delivering them, without more, on this letter, the warranty was complete.

If the cattle on trial and further investigation proved to be otherwise than as warranted, the vendee had two

2. ———: breach of warranty. remedies. He could have returned the property to the vendor, provided he acted seasonably, and rescinded the contract; or he could have retained the same, and when sued for the purchase money pleaded a total or partial failure of consideration. The evidence showed "that the injury on the neck was a material injury affecting the value of the steer." This, if true, authorized a rescission of the contract. The cattle were worked only once; and two weeks was not an unreasonable time to allow the vendee, under the circumstances, to return them to the vendor and demand a rescission.

The evidence of their return and delivery to Branson was not sufficient to authorize the jury to find the fact of such return. It only showed that Turner started a man with them to so deliver them, and they were afterward found in the woods near Branson's, who knew they were there. This could have well consisted with the fact that the bailee of the vendee might have driven them merely into this neighborhood and turned them loose, without informing the vendor. The burden as to the re-delivery resting on the vendee, his proof was not sufficient, in my opinion, to authorize the submission of this question to the jury; and all instructions predicated thereon were properly refused.

But on the other hand, if by reason of the breach of warranty the cattle were rendered less serviceable or valuable to the vendee, he was entitled to recoup out of the purchase money the amount of the diminished value. The trouble with the defendant's second, third and fourth instructions is, that they assume all the way through that the steers were, in fact, returned, and declare that the plaintiff could not recover anything at all, if there was a breach of the warranty. Treating the redelivery as out of the case, it did not follow that the plaintiff could recover nothing, if there was a false representation or breach of contract. So the second, third and fourth instructions were rightly refused.

3. ———: ———: recoupment.

The first instruction given for defendant, like the second, was faulty in declaring, in effect, that the burden 4. ——— : ——— : burden of proof. rested on the plaintiff to prove that the warranty was good. When he showed the sale and delivery to the defendant, if the defendant claimed a failure of consideration, total or partial, consequent upon a breach of the warranty, he held the laboring oar as to this issue.

The instructions given by the court on behalf of plaintiff would have been unobjectionable, but for the third. It 5. ——— : ——— : fraud tells the jury on a certain state of case to find for the plaintiff, " unless they further believe that plaintiff made false and fraudulent representations in regard to the cattle, which actually deceived and misled defendant to his injury." On what was the jury to predicate such belief? It ought to be founded on the evidence; but this instruction does not say so. If there was an express warranty, it was not necessary that there should have been " fraudulent representations," nor that defendant should have been "actually deceived and misled." He had a right to rely on the letter of warranty. This instruction was misleading and amounts to error.

As to the evidence excluded : The record recites that " the defendant offered to prove by experts that the sore 6. EXPERT TESTI-MONY. on the neck rendered him (I presume the steer, not the defendant) unfit for beef." This proof the court excluded. The probabilities are that the witnesses thus offered were not experts under a proper judicial test. But there is no evidence on this qualifying point preserved to enable us to pass on that question. On the contrary, the record recites that the proof offered was " by experts." There could be expert testimony on such a fact. 1 Wharton Ev., § 444. If the point sought to be established was admissible, the evidence offered " by experts " was competent.

But respondent contends that the evidence was inadmissible, because it only went to the point that the sore

7. WARRANTY.     rendered the steer "unfit for beef," whereas, as he claims, the appellant bought him only for work. As the contract between the parties was evidenced by writing, and was completed by the delivery of the property, the warranty covered both the qualities of beef and work; and although the purchaser, when he bought may have designed in his own mind, uncommunicated, to use them for the one purpose or the other, it was no concern of the vendor, who sold them as fit for either. Under the terms of the sale the purchaser may have designed to work the steer for the present, and then put him on the market for beef. Under proper instructions the trial court could guide the mind of the jury in the matter of assessment of damages or reduction of value consequent upon the diminution on either ground.

For the foregoing reasons the judgment of the circuit court is reversed and the cause remanded for re-trial. All concur.