S. R. MARTIN, Respondent, v. T. MAXWELL ET AL., Appellants.

St. Louis Court of Appeals. June 2, 1885.

1. WARRANTY—BREACH OF—APPELLATE PRACTICE.—In an action for a breach of warranty in the sale of a horse, a judgment for the plaintiff will be reversed where there is no evidence as to the value of the horse, or of the difference between the actual and the represented condition of the horse.

2. ——— TENDER.—The purchaser of a chattel may maintain an action for the breach of warranty of soundness without tendering the chattel back to the vendor.

APPEAL from the St. Louis Circuit Court.—HORNER, J.

*Reversed and remanded.*

GEO. D. REYNOLDS, for the appellants: The instructions asked at the close of plaintiff's case, being in effect demurrers to the evidence, should have been given. *Stamm v. Kuhlman,* 1 Mo. App. 296, and cases there cited ; Benjamin on Sales, 2nd Ed., p. 504 (Book IV, Part II). Plaintiff with knowledge of defect had accepted the property and exercised acts of ownership. Story on Sales, sect. 159 (4th Ed.) ; Benjamin on Sales, pp. 114, 578 and 753.

JAMES M. LEWIS, for the respondent: It is not necessary, in order to constitute a warranty, that the word "warranty" should be used. It is sufficient if the words used signified an undertaking that the property is what it is represented to be. *Graff v. Foster,* 67 Mo. 512. Instruction asked by defendants was properly refused, as an actual tender is not required when refusal to accept is unqualifiedly made. *Deikmann v. Deikmann,* 49 Mo. 107.

THOMPSON, J., delivered the opinion of the court.

This action was commenced before a justice of the peace for damages for a breach of warranty in the sale of

a horse. It was appealed to the circuit court and there tried anew before a jury, and the plaintiff had a verdict and judgment. The statement of claim contained averments appropriate to an action for damages for a deceit, as well as to an action for damages for a breach of warranty; but at the trial the court ruled that the plaintiff could proceed only for a breach of warranty, and in the state of the record this ruling is not open to question. The damages claimed were one hundred and forty dollars; those allowed by the verdict and judgment were one hundred and twenty dollars.

There was evidence substantially to the effect that the plaintiff kept a stable and dealt in horses at St. Charles, Mo., and that he also had a farm some fifteen miles north of St. Charles; that the defendants were partners keeping a stable and dealing in horses in St. Louis; that there was a partnership firm known as Howard & Davis, who had a business connection with the defendants of this kind: They dealt in horses on the defendants' premises, buying them entirely with money furnished them by the defendants. They had no sign of their own over or near their place of business, and there was nothing to indicate externally that they were a separate firm from that of Maxwell Bros. They rented a stable of Maxwell Bros., which was connected with the rest of the stable of that firm, for a stated sum per month, and they paid Maxwell Bros. a certain portion of all commissions received by them for sales made there on commission, and a certain portion of all the proceeds made by them while they bought and sold for profit with money furnished by Maxwell Bros. But there was no agreement that Maxwell Bros. should share any losses which Howard & Davis might incur. Howard & Davis, thus, under this convenient arrangement, carried on business under the wing, so to speak, of Maxwell Bros., wholly with the capital of Maxwell Bros., divided the profits with Maxwell Bros., but pocketed all the losses themselves, which, being insolvent, they were able to do.

The plaintiff, being at the stable of Maxwell Bros., in St. Louis, was shown a mare by Davis, one of the firm

of Howard & Davis. Davis offered to sell the mare to him for one hundred and forty dollars. He did not accept the offer, but, after returning to St. Charles, found that he could sell the mare to a German farmer, provided that she was sound ; and he accordingly sent the following telegram to Maxwell Bros. :  "Tell Ike I will take the big mare Monday, at one hundred and forty dollars, if she is all right. Answer."  Maxwell Bros. replied, by telegram over their own name,  "All right."  The next day the plaintiff sent a young man down to get the mare. As to what took place between this young man and Maxwell Bros. and Howard & Davis, the evidence is conflicting; but there was evidence tending to show that, although the mare was hitched up and "tried" in the presence of the young man, she was warranted to be sound by one of the Maxwell Bros. The young man got on her back and rode her to St. Charles, a distance of about twenty miles, starting somewhere between ten and twelve in the morning, and arriving about five in the evening.  He had not ridden her many miles before he discovered that something was the matter with her.  Her wind was bad, and, though he walked her all the way, he found on arriving that she was lame in one hind leg, and seemed to be feeling bad and exhausted.  He communicated to the plaintiff these facts concerning the mare ; but the plaintiff, notwithstanding, on the following day turned her over to the German farmer who had agreed to take her. A day or two afterwards the farmer brought her back, and then the plaintiff found that she was "thick winded" and "spring halt" in one hind leg.  He did not return her to Maxwell Bros., but sent her out to a farm to pasture, and then went to see Maxwell Bros. to have the matter settled.  The result of several interviews between him and them was that they agreed that if he would bring the mare back they would, if she proved to be unsound, pay him his money back, according to his testimony, or see that he got it back, according to their testimony.  Immediately after they had come to this agreement the mare died.  There is no evidence in the record as to the cause of her death.  She was taken to

the pasture sick—"thick winded," "spring halt," and not disposed to eat—and a few days after that she died ; but that she died of the disease which she had when taken to the pasture, the record does not show. For aught that appears, she may have been killed by an accident.

The plaintiff paid Maxwell Bros. (or according to their contention, Howard & Davis), one hundred and forty dollars for the mare in the form of a check on a bank, drawn in favor of Maxwell Bros., and delivered to them by the young man whom he sent to them for the mare, and endorsed by them, and paid by the bank. The German farmer was to have paid the plaintiff one hundred and seventy-five dollars for the mare, if she had been sound. No evidence whatever was adduced at the trial of the value of the mare if sound, that is, of her value in the condition in which, according to the plaintiff's evidence, the defendants warranted her ; nor was any adduced as to her value in the condition in which she actually was. If it had been shown that she died a few days after the purchase, of the sickness which she had at the time when the plaintiff bought her of the defendants, the conclusion, although not necessarily following, might have been drawn, that she was of no substantial value at that time. *Stearns v. McCullough*, 18 Mo. 411. But, as we before said, there was no such evidence. We are of opinion that neither the fact that the plaintiff paid the defendants one hundred and forty dollars for her, nor the further fact that the German farmer agreed to pay the plaintiff one hundred and seventy-five dollars for her, assuming her to be sound, was evidence of her value at the time of her purchase if sound. There was, therefore, no evidence whatever as to her value in the condition in which, according to plaintiff's evidence, the defendants warranted her, and no evidence whatever as to her value in the condition in which she actually was. The evidence, therefore, afforded no foundation for the giving of the instruction which the court gave as to the measure of damages, although it was good as an abstract proposition of law. Neither was there any evidence which warranted

the court in submitting the question of damages to the jury, or which could have authorized a verdict for the plaintiff for more than nominal damages ; and the court erred in refusing to instruct the jury, as requested by the defendants, that the plaintiff could not recover more than nominal damages.

For these errors the judgment must be reversed ; and, as the cause must go back for another trial, it may be proper to indicate our opinion upon some other points which arise upon the record. It is not the law, as the learned counsel for the defendants argue, that the plaintiff, in order to maintain this action for a breach of warranty, was bound to bring the horse back to St. Louis and tender it to the defendants, and that he lost his right of action by exercising acts of ownership over the horse after discovering its defective condition. *Ross v. Barker*, 30 Mo. 385 ; *Soper v. Breckenridge*, 4 Mo. 14; *Getty v. Rountree*, 2 Pinney 379 ; 54 Am. Dec. 138 ; *Voorhees v. Earl*, 2 Hill 288 ; s. c. 38 Am. Dec. 588 ; *Curtis v. Hannay*, 3 Esp. 82. He was entitled to keep the mare for the good she would do him, and hold the defendants on their contract of warranty.

The instruction as to what constitutes a partnership, as applicable to the facts of this case, should omit the element of a participation in the losses. Co-adventurers become partners in respect of third persons, and liable for each other's acts and representations as such, where their agreement is to share the profits of their joint adventure, although there may be no agreement for a contribution in respect of the losses.

Aside from any question of partnership, there was sufficient evidence in the record to take to the jury upon the question whether the plaintiff, in point of fact, bought the horse of Howard & Davis, or of Maxwell Bros., or whether Howard & Davis, in selling the horse, acted for themselves, or as the agents of Maxwell Bros. There was also evidence which would have warranted an instruction to the effect that if Maxwell Bros. allowed Howard & Davis to trade in their stables in the same manner in which they themselves traded, without any

sign out or other public notification of the fact that they were independent traders, and not mere agents or employes of Maxwell Bros., the latter would be estopped to deny that the former were their agents. The judgment is reversed and the cause remanded. All the judges concur.