EXCELSIOR STOVE MANUFACTURING COM-
PANY, Appellant, v. MARK M. MILLION, Re-
spondent.

**Kansas City Court of Appeals, December 1, 1913.**

1. **ACCOUNTS: Counterclaim: Statute.** The plaintiff sued on an
account in a justice court for stoves sold and delivered to
defendant. The latter not only refused to pay, but filed a
counterclaim for damages for breach of contract and warranty
and loss of business. The cause was appealed to the circuit
court and upon trial, the defendant was allowed, over the
objection of the plaintiff, to amend his counterclaim by striking
out the item of damages resulting from loss of business and by
inserting a new demand for freight charges. *Held*, that a
counterclaim may be amended in the circuit court, under Sec.
7586, R. S. 1909, but not so as to change the cause of action
nor add a new cause to that originally pleaded.

2. ———: ———: **Breach of Warranty: Remedies.** Where the
vendor has been guilty of a breach of warranty the vendee has
two remedies: First, he may recover the difference in value
between the chattel as warranted, and its actual value in its
defective condition; or he may, within a reasonable time, reject
and return the chattel to the vendor and maintain an action for
the recovery of the full amount paid on the purchase price.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D.
Rusk,* Judge.

REVERSED AND REMANDED.

*Warren Rodgers* for appellant.

*A. Bowers* for respondent.

JOHNSON, J.—In July, 1912, plaintiff, a manu-
facturer of stoves in Quincy, Illinois, sued defendant
in a justice court upon an account for stoves delivered
in March, 1908, to defendant who, at that time, was
a retail merchant in Sheridan, Missouri. The total
value of the stoves as shown by the itemized account
attached to plaintiff's statement was $245.97 and the

suit was for the recovery of that amount less a credit of $48.55, paid on the account June 19, 1909.

Defendant appeared in answer to the summons and filed the following counterclaim: ''The defendant for his counterclaim and cause of action against said plaintiff alleges and says that said plaintiff sold defendant several cook stoves upon a warranty that said stoves were good stoves and would give good satisfaction. That the defendant relying upon said warranty sold one of said stoves to Jesse Grace. That said stove was not a good stove and did not give satisfaction and after said Grace had tried said stove and it failed, defendant notified said company and they undertook to put said stove in order and undertook to make it do good work and could not. That said Grace sued said Million in the justice court at Sheridan, Mo., for the purchase price, to-wit: Forty-five dollars and in said court in Sheridan, Mo., recovered judgment for said purchase price for forty-five dollars and costs $19.55, all of which defendant paid. That defendant paid fifty dollars for attorney fees to defend said suit.

''That by reason of plaintiff's breach of contract and warranty as aforesaid defendant was damaged in loss of business in the sum of $200. Wherefore defendant asks judgment against plaintiff for costs paid, $19.55, attorney fees paid fifty dollars, and for damages, $200, in the total sum of $269.55 and costs.''

After the cause was appealed to the circuit court, defendant, over the objection of plaintiff, was permitted to amend his counterclaim by striking out the item for damages resulting from loss of business and by inserting a new demand for twenty-five dollars, the amount defendant had paid for freight and drayage on the arrival of the stoves at Sheridan.

At the trial in the circuit court counsel for defendant admitted the account and assumed the burden of proof. Defendant was the only witness introduced.

by either party and his testimony discloses the follow-
ing facts. He gave an oral order for the stoves to a
traveling salesman of plaintiff who warranted that they
would be well made and would give good service. A
similar printed warranty was placed by plaintiff in the
oven of each stove for the benefit of defendant's cus-
tomers. Defendant paid the freight and drayage on
the stoves and placed them on sale in his store but
did not make a sale until almost a year later when he
sold one to Jesse Grace, a fellow townsman who paid
the purchase price of forty-five dollars. The stove did
not give good service and Grace complained to defend-
ant who, in turn, complained to plaintiff.

This stove, in common with the others, appeared
to be in good condition and serviceable but "it would
not draw." A representative of plaintiff visited Sher-
idan in response to defendant's complaint and at-
tempted to put the stove in serviceable shape but with-
out success. Grace became importunate and demanded
that the stove be taken back and his money refunded.
Defendant referred the demand to plaintiff's agent
who instructed him to refuse to rescind the sale and
agreed that plaintiff would reimburse him for any out-
lay he might be compelled to make in defense of his
customer's demand. Grace sued defendant as upon a
rescinded sale and recovered a judgment for the pur-
chase price and costs in the sum of $19.55. Defendant
paid the judgment and also paid a fee of fifty dollars
to an attorney he employed to defend the suit. The
total loss he sustained on account of that suit was
$69.55. He did not ask plaintiff to repay him, made no
complaint that the other stoves were defective and
did not offer to rescind the contract until more than a
year after the termination of the Grace suit. He tes-
tified on cross-examination: "After that suit was
over I never heard anything from them for a long
while; they did not take it up. About a year after I
sold out they notified a couple of attorneys, Kelso

and someone from Grant City, who came over and talked to me. I told them I would not pay it and told them why." . . . "Q. Now did you tell them that their traveling man had agreed to pay costs of suit or anything of that kind? A. Well, as I said, in writing to them I do not know whether I mentioned what he said or not."

On direct examination (referring as we understand to the conversation he had with the attorney plaintiff employed to collect the account), defendant said, "I told him there was his stoves now, that since the company had refused to pay this bill and would not stand back of their guarantee, I did not want 'them and absolutely refused to pay them a nickel."

At the request of defendant the court instructed the jury as follows: "1. If you find from the evidence in this case that the plaintiff sold defendant some cook stoves, for which this suit is brought, upon a contract to warrant the said stoves to give satisfaction to defendant's trade; that the defendant sold one of said stoves only; that said stoves were all alike in construction, and were worthless; that the stove so sold did not give satisfaction, by reason thereof the purchaser sued the defendant, and recovered judgment against him for the purchase price and costs; that the plaintiff knew about the suit and agreed to pay all costs and judgment that might be recovered against the defendant; and that in said suit said purchaser recovered a judgment against the defendant for the purchase price and for costs amounting to $19.—; that the defendant paid said costs and fifty dollars for attorney fees in said case; then your verdict should be for the defendant, for the amount of said costs and attorney fees, said fees not to exceed twenty-nine dollars, and also for such further sum, if any, as you may find that the defendant paid out for freight and drayage upon said stoves.

"2. If you find from the evidence in this case that plaintiff sold the stoves upon a warranty to give satisfaction to defendant's trade; that defendant sold only one of the cook stoves and that the one sold did not give satisfaction to such customer, then plaintiff was not bound to take any of said stoves, and that the plaintiff cannot recover from the defendant on said contract of sale.

"3. The court instructs the jury that if you find from the evidence in this case that plaintiff sold defendant stoves upon a warranty that the stoves should give satisfaction to defendant's customers; that the defendant sold only one of said stoves and that the same did not give satisfaction, then the defendant was not bound by his contract to take any of said stoves, and if you find that the defendant repudiated such contract, and tendered back to plaintiff the stoves, then your verdict will be for the defendant on the account."

Thus instructed the jury returned a verdict for defendant on the account and also for defendant on the counterclaim in the sum of $69.55. Afterwards defendant filed a remittitur of twenty-five dollars and judgment was entered for the amount of the verdict less the sum remitted. Plaintiff appealed.

The cause pleaded in the counterclaim filed in the justice court was not founded on a sale rescinded by the vendee on the ground of a breach of warranty by the vendor, but was for the recovery of the damages the vendee sustained in consequence of a breach of an express warranty. The rule is that where the vendor has been guilty of a breach of warranty the vendee has two remedies, viz.: He may take and keep the chattel and sue for damages growing out of the breach of warranty, in which case he may recover the difference in value between the chattel as warranted and its actual value in its defective condition; or he may, within a reasonable time, reject and return the chattel to the vendor and maintain an action for the recovery

of the full amount paid on the purchase price. [Laumeier v. Dolph, 145 Mo. App. l. c. 84, and cases cited.]

Defendant did not attempt to rescind the contract on account of finding a defective stove in the number delivered by plaintiff but elected, as his counterclaim clearly shows, to keep the stoves, and have recourse on plaintiff for damages he sustained from the breach of warranty. In such case he became bound to pay plaintiff the contract price of the stoves and became entitled to set up his damages by way of counterclaim. [Brown v. Weldon, 27 Mo. App. 251.]

In the counterclaim he filed in the justice court he restricted his damages to those resulting to him from the defective stove he sold to Grace and he should not have been allowed to enlarge his demand by amendment in the circuit court, and certainly should not have been allowed to go to the jury on the issue of a rescinded contract which was repugnant to the issues tendered by his pleading and evidence. The statute reads that "no set-off nor counterclaim shall be pleaded in the appellate court that was not pleaded before the justice." [Section 7586, Rev. Stat. 1909.] A counterclaim may be amended in the circuit court but not to change the cause of action nor add a new cause to that originally pleaded. Manifestly defendant would have been entitled to set up his whole damage resulting from the alleged breach, but he chose to plead only a single item and must be held to the ground of his own selection.

Under the admission of defendant that the account was correct, the jury should have been instructed to return a verdict for plaintiff in the amount of the account, and the only issues submitted under the counterclaim should have been those relating to the damages, if any, defendant sustained on account of the stove sold to Grace.

The judgment is reversed and the cause remanded. All concur.