Eversole v. Hanna.

---

S. G. EVERSOLE and LAURA EVERSOLE, Respondents, v. FRED HANNA, Appellant.

Kansas City Court of Appeals, November 23, 1914.

1. CONTRACTS: Damages: Pollution of Milk. Plaintiffs seek to recover damages for a breach of contract. . The defendant, a dairyman, sold plaintiffs a dairy route and agreed to sell them fifty gallons of pure milk per day until March first of the following year. The defendant stopped furnishing them milk before the expiration of the contract. The plaintiffs lost many customers because the defendant furnished impure milk. Held, that where goods, delivered under a warranty that they are suitable for a special purpose, are found to be defective, the vendee has the option of rescinding the sale and returning the goods to the vendor or of keeping them and requiring the vendor to respond in damages to the extent of the difference between the value of the goods had they been of the quality contracted for and their real value in their inferior condition. No waiver of quality may be implied from mere retention of the inferior goods by vendee.

2. INSTRUCTIONS: Damages, Measure of. An instruction on the measure of damages which states that "the difference, if any, between the market value of the milk of the kind, quality and quantity furnished by defendant to plaintiffs, from first day of April, 1913, to the 26th day of July, 1913, and the market value of the pure milk of the same quantity furnished by defendant from the first day of April, 1913, to the 26th day of July, 1913," is a proper statement of the law.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mayer*, Judge.

AFFIRMED.

*John E. Heffley, Wm. N. Linn* and *Homer C. King* for appellant.

(1) The verdict was excessive and shows on its face that it was found on sympathy from the statement of plaintiff, Laura Eversole, that she was a widow and that she left the impression with the jury that she was supporting nine children. "The damages, if any allowed at all, should only be a nominal sum where the amount of damages is not shown, nominal damages will be awarded." 46 Mo. App. 407; 10 Mo. App. 593. (2) Plaintiff alleged that the milk was not worth more than two cents per gallon. Where vendee obtains property sold and sues for breach of warranty as to quality he cannot recover the entire price, unless the article is shown to be worthless for any purpose. Small v. Bartlett, 96 Mo. App. 550. (3) Waiver takes place where a man dispenses with the performance of something which he has a right to exact and a technical doctrine introduced and applied by the courts for the purpose of defeating forfeitures. 40 Cyc. 254, citing 62; Francis v. A. O. U. W., 150 Mo. 348-355; Read v. Bankers Union of the World, 121 Mo. 419; Cochran v. Bartle, 91 Mo. 696.

*B. G. Voorhess* for respondents.

(1) When goods are sold under a warranty, and they prove to be defective, the vendee may rescind the contract and return the goods, or he may keep the goods and sue for the difference between the market value of the goods such as were received and the markket value of goods called for in the contract. St. Louis Brewing Assn. v. McEnroe, 80 Mo. App. 429; The New Birdsall Co. v. Keys, 99 Mo. App. 463; Danforth & Co. v. Keys, 99 Mo. App. 317; Branson v. Turner, 77 Mo. 489. (2) Where a buyer has made in advance a contract for resale of the goods purchased, and this fact is known to the vendor, and the vendor fails to deliver goods of the quality and quantity contracted for, he is liable to the vendee on the basis of the profits

the vendee would realize under his contract for resale. 3 Sutherland on Damages (3 Ed.), page 1932; 35 Cyc., p. 645; Shouse v. Neiswanger, 18 Mo. App. 244.

JOHNSON, J.—This is an action for breach of a written contract entered into April 1, 1913, by the terms of which defendant, a dairyman, sold plaintiffs a dairy route in St. Joseph and certain personal property employed in the business for $450, and agreed to sell plaintiffs "fifty gallons of pure milk per day until March 1, 1914, at seventeen and one-half cents per gallon." Plaintiffs paid $300 on the purchase price and executed and delivered to defendant their promissory note for the remainder, due March 1, 1914, and secured by a chattel mortgage on the property. There were eighty-five customers on the route and together they purchased about thirty-five gallons of milk daily, which was sold at the rate of fourteen quarts for one dollar. Plaintiffs lived on a little farm near the city limits and kept a few milch cows from which they ob- the roof of a privy but had not been in such service purchasing defendant's route they sold the milk they procured from their own cows in bottles and that purchased from defendant was sold out of five and ten gallon cans. Defendant had a dairy farm in the country a mile or more from the residence of plaintiffs and delivered to plaintiffs the milk from morning milkings, transferring it from his wagon to theirs just before the latter started on its morning trips to retail customers. Plaintiffs went to defendant's dairy for the milk procured in the evenings, a part of which they delivered the same evening to customers. They placed the cans containing the remainder which was to be delivered the next morning in a concrete basin filled with water to keep the milk cool and fresh. The basin was enclosed by a small frame building, the roof of which had been for about five years. Pursuant to the contract, defend-tained four or five gallons of milk each day. After

ant furnished plaintiffs forty gallons of milk each day from April 1st to the 26th day of the following July when he quit. At that time plaintiffs, who had agreed to pay at the end of each week for the milk procured during that week, had been unable to do so and were indebted to defendant in the sum of $73, in addition to the chattel mortgage note. Defendant claims that he stopped furnishing milk on account of this indebtedness but his testimony, as a whole, tends to corroborate the contention of plaintiffs that he quit, not because of the condition of the account, but because plaintiffs were complaining of the quality of the milk he was furnishing and the losses it was causing them.

Witnesses introduced by both parties agree with one voice that the milk plaintiffs served their customers out of the five and ten gallon cans, and which they procured from defendant, was so poor in quality that many of the customers changed milkmen, and plaintiffs state they lost from that cause customers who had taken, in all, fifteen gallons of milk daily. The milk was "stringy and ropy," of suspicious color and appearance and some of the witnesses say it had an evil odor. Tests made by the authorities acting under the pure food laws of the city showed that it was deficient in butter fat and other solids and contained too much water. From some of the expert evidence it appears that the adulteration of milk with cold water will engender germ life resulting in the condition described by witnesses as stringy and ropy. Plaintiffs introduced evidence tending to show that defendant watered the milk he delivered to them and that the sanitary conditions of his dairy were bad. On the other hand defendant offered evidence which cast the blame on plaintiffs for the conditions which rendered the milk unwholesome and unmarketable. One fact is undisputed and that is that the milk when delivered by plaintiffs was not fit for human consumption and had

no value except as food for swine for which purpose it was worth not over two cents per gallon.

The breach of contract alleged and upon which recovery was allowed was the failure of defendant to furnish plaintiffs with pure milk. The court submitted that issue to the jury and a verdict was returned for plaintiffs in the sum of $500. The finding of the jury, thus expressed, that the impurity of the milk was caused solely by the willful or negligent wrong of defendant, is found to be sustained by substantial evidence.

The defense that the pollution emanated from the old roof over the concrete basin is met by proof that the impurities were those which came from pouring cold water into milk and that they did not appear in the milk kept overnight in the basin but only in that transferred in the mornings from defendant's wagon to the wagon of plaintiffs and immediately thereafter delivered to the customers. There being substantial evidence in the case that the milk furnished by defendant to plaintiffs was impure and therefore unsuitable for human consumption, the court did not err in overruling the demurrer to the evidence. Knowing at the time the contract was entered into that it was to be furnished for the special purpose of being resold to consumers, the defendant, in undertaking to furnish pure milk, warranted that that which he would furnish under the contract would be reasonably suitable for the purpose for which it was being purchased. The breach of the contract is well established and we think counsel for defendant are wrong in their view that in continuing to accept inferior milk plaintiffs waived the breach. The rule is well established that where goods delivered under a warranty that they are suitable for a special purpose are found to be defective, the vendee has the option of rescinding the sale and returning the goods to the vendor or of keeping them and requiring

the vendor to respond in damages to the extent of the difference between the value of the goods had they been of the quality contracted for and their real value in their inferior condition. No waiver of quality may be implied from the mere retention of the inferior goods by the vendee. [St. Louis Brewing Ass'n v. Mc-Enroe, 80 Mo. App. 429; The New Birdsall Co. v. Keys, 99 Mo. App. l. c. 463; Branson v. Turner, 77 Mo. 489.]

Plaintiffs deserve reprobation for the use they attempted to make of the impure milk and have been severely punished in the loss of custom and of standing in their business which their lack of humanity has entailed upon them. But their attempt to wrong others which was born of the wrong of defendant does not deprive them of the legal right to hold defendant to account for his breach of contract.

The demurrer to the evidence was properly overruled.

The instruction given by the court declared the law of the case and properly defined the measure of damages as "the difference, if any, between the market value of the milk of the kind, quality and quantity furnished by defendant to plaintiffs, from the first day of April, 1913, to the 26th day of July, 1913, and the market value of pure milk of the same quantity furnished by defendant from the first day of April, 1913, to the 26th day of July, 1913."

There is no merit in the point of an excessive verdict. The judgment is affirmed. All concur.