# Brown & Co., *et al. v.* Matthews.

### Assumpsit.

(Decided November 16, 1915.  Rehearing denied December 8, 1916.
70 South. 287.)

1. **Contracts; Burden.**—Where the action was ex contractu on a joint obligation of all defendants, a plea of the general issue puts on plaintiff the burden of proving the case as laid in the complaint.

2. **Sales; Joint Liability.**—Where a firm and individuals are sued for breach of warranty in a joint sale, it is not essential to the joint liability that the individuals be members of the firm.

3. **Trial; Directing Verdict; Immaterial Plea.**—Where a plea sets up a technical and immaterial issue, and plaintiff joins issue thereon defendant is not entitled to an affirmative instruction thereunder, where the evidence does not affirmatively prove the plea beyond controversy.

4. **Sales; General Warranty; Apparent Defect.**—Where the nature and effect of the disease may reasonably be supposed to be more within the knowldge of the seller than the buyer, a general warranty of a horse sold may be so expressed as to protect the buyer against the effects of a disease from which the horse is suffering.

5. **Charge of Court; Invading Jury's Province.**—It is proper to refuse instructions which invade the province of the jury.

6. **Same; Abstract.**—Charges which are abstract are refused without error, such as a charge hypothesized upon a defendant not being a member of a firm of a name other than any firm involved in the transaction.

7. **Appeal and Error; Harmless Error; Instructions.**—Where the jury returned a verdict against all the defendants the refusal of a charge that plaintiff could not recover against either of defendants unless entitled to recover against all, was rendered harmless.

8. **Evidence; Res Gestae; Statements by Seller.**—Pending negotiations of the sale of a horse by defendants to plaintiff, statements by defendant as to its quality, and where they got it, being of the res gestae and tending to shed light on the conduct of the parties, and their intention at the time of the sale, are admissible in an action for a breach of warranty of soundness of the horse.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by E. E. Matthews against J. B. Brown & Co. and others, for damages for breach of warranty in the sale of stock. Judgment for plaintiff, and defendants appeal. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused to defendant:   (2) Under the evidence

[Brown & Co., et al. v. Matthews.]

a warranty of the soundness of the mare given by Hubbard would not be binding on either Brown or Gilbreath.

(3) Unless the jury find against defendant Hall, they cannot find against either of defendants.

(6) A warranty of the soundness of the mare given by Hall would not bind defendant Hubbard.

(7) A warranty of the soundness of the mare given by Hall would not bind either Brown or Gilbreath.

(8) A warranty of the soundness of the mare given by Hubbard would not be binding on defendant Hall.

(9) A warranty of the soundness of the mare given by Gilbreath could not be binding on Hall.

(14) The court charges the jury that if Hubbard individually was not a member of the firm of J. B. Brown Trading Company, but if the only connection he had with that concern was that the Albertville Trading Company owned a one-third interest in the Brown concern, and that Hubbard was only a stockholder, and officer in the Albertville Trading Company, then a warranty given by J. B. Brown Trading Company, or any member of that concern, would not render Hubbard individually liable.

(1) A general warranty of soundness given by defendants would not cover an ailment of which plaintiff at the time was informed and knew.

(15) The court charges the jury that if the warranty given by defendant (if any was given) was that there was nothing the matter with the mare except shipping cold or shipping fever, then your verdict must be for defendant, and the fact, if it be a fact, that the mare died with shipping cold or shipping fever, or from pneumonia resulting therefrom after the plaintiff bought the mare, would make no difference.

(4) Plaintiff cannot recover against either of defendants unless he is entitled to recover against all the defendants.

STREET, ISBELL & BRADFORD, for appellant. JOHN A. LUSK & SON, and E. A. HAWKINS, for appellee.

BROWN, J.—This action is for breach of warranty as to the soundness of a mare, which the plaintiff alleges he purchased from the defendants, and which, as is alleged in the complaint, "the defendants warranted to be sound, healthy, and free from disease, when in fact the said mare was unsound and diseased

and died  *   *   *   from disease and unsoundness with which she was affected at the time of the sale and warranty."

(1)  The action is ex contractu on a joint obligation of all the defendants, and the plea of the general issue put upon the plaintiff the burden of proving the case as laid in the complaint.— *Lowe & Samford Grocery Co. v. Adamson*, 12 Ala. App. 541, 68 South. 476; *McAnally v. Hawkins' Lumber Co.*, 109 Ala. 398, 19 South. 417; *Tallapoosa County Bank v. Salmon*, 12 Ala. App. 589, 68 South. 542.

(2)  The evidence adduced by the plaintiff tended to show that he purchased the mare in question from the defendants, who warranted her to be sound; while that adduced by the defendants tended to show that the defendants Hubbard and Hall were not personally interested in the transaction, nor parties to the alleged sale and warranty.  It was not essential to the joint liability of Hall and Hubbard with the other defendants that it be shown that they were members of the firm of J. B. Brown & Co. A fortiori, if the defendants sold the mare to the plaintiff and warranted her to be sound and free from disease—as the plaintiff's evidence tended to show—all the defendants would be liable, regardless of whether they were members of the firm of J. B. Brown & Co., or not.

(3)  In view of the conflicting tendencies in the evidence, the case as presented on the general issue was one for the jury.  The defendants, in addition to the plea of the general issue, separately interposed special pleas.  The special plea of the defendant Hall alleges:  "That he is not a member of the firm of J. B. Brown & Co., was not at the commencement of the suit, and was not at the time of the transaction out of which the action arose."

The defendant Hubbard interposed a like plea, and, in addition thereto, a plea averring "that he did not participate in the transaction between the plaintiff and J. B. Brown & Co. out of which this action arose," and the plea of the other defendants avers:  "That I. E. Hubbard is not and has never been a member of the firm of J. B. Brown & Co., and that J. O. Hall is not and has never been a member of the firm of J. B. Brown & Co."

What we have said as to the joint liability of the defendants demonstrates that all of these pleas present an immaterial defense; but appellants insist that, issue having been joined on these pleas, they were entitled to the affirmative charge, which was refused to them.  This involves a consideration as to whether

these pleas are sustained by the undisputed evidence. Hall testified: "I had no interest at all in the business; only I rented the barn to them. They had some stock in there, and I was working for them, helping them trade some. Beyond that I had no interest. I have no interest in this lawsuit."

This is all the evidence in support of Hall's special plea; and while it tends to support the averment of his plea that he was not a member of the firm of J. B. Brown & Co. at the time of the transaction out of which the action arose, and at the commencement of the suit and the time of the trial, yet it does not affirmatively prove these averments. The defendant assumed the burden of proving the averments of his plea; and, inasmuch as the defense thereby set up is technical and immaterial, the evidence must affirmatively prove all of its averments before he is entitled to the affirmative charge thereon. J. B. Brown testified: "Hubbard was interested in the live stock. His interest was just what interest he has in the Albertville Trading Company. The Albertville Trading Company owns one-third interest, I one-third, and Gilbreath one-third."

And Hubbard testified: "I had no individual or personal interest in the J. B. Brown Trading Company. The Albertville Trading Company had an interest, and I am interested in the Albertville Trading Company. That is a corporation. I did not tell Matthews that the Albertville Trading Company was the one selling the stock. I did not tell him that I was not personally interested in it. I told him that we had some good stock, but did not tell him that I would always make them all right; did not tell him that I would stand behind them," etc.

This proof does not establish beyond controversy that Hubbard was not a member of the firm of J. B. Brown & Co., nor that Hubbard and Hall were not and never had been members of this firm, as averred in the pleas, and conclusively disproves the plea of Hubbard that he did not participate in the transaction. The affirmative charges as to all defendants, and as to the defendants Hubbard and Hall, separately requested, was properly refused.

Furthermore, the writer is of the opinion that, inasmuch as the matter set up in the special pleas was not good as a defense to the action, as we have shown, the pleas were purely technical and the defense set up thereby immaterial, and pretermitting a consideration of the question as to whether the proof sustains

these pleas, it cannot be said, after an examination of the entire case, that the refusal of the affirmative charge predicated on these pleas and the proof thereof probably injuriously affected a substantial right of the parties, and that the refusal of these charges cannot avail to reverse the judgment of the trial court under rule 45, Supreme Court Practice (175 Ala. xxi, 61 South. ix) ; PELHAM, P. J., being of the opinion that it is not a case where rule 45 can be applied, and the court cannot say the error complained of has not probably injuriously affected the substantial rights of the parties, when they have seen fit to try the case on an immaterial issue without raising the objection of immateriality and thereby making the issue material as between the parties in the case ; while THOMAS, J., is of opinion that this court is concluded from applying rule 45 by the holding of the Supreme Court in *Pratt Consolidated Coal Co. v. Davidson,* 173 Ala. 667, 55 South. 886; but all agree that the special pleas were not conclusively proven.

(4) As appellants contend, the warranty relied upon is an express warranty, and not one implied from circumstances attend the negotiations culminating in the sale. A warranty may be so expressed as to protect the purchaser of a chattel against the consequences of patent defects, especially when the nature and extent of the defect may reasonably be supposed to be more within the knowledge of the seller than the buyer.—35 Cyc. 377, 378, VII, C, 6, a (1) ; *Branson v. Turner,* 77 Mo. 489; *Fletcher v. Young,* 69 Ga. 591. While the evidence was conflicting on this point, the plaintiff's evidence tended to support the theory that the warranty was made against the effects of the shipping fever, from the effects of which the evidence tends to show the mare was suffering at the time of the sale. Touching this subject, the plaintiff testified that during the negotiations "I said, 'that mare seems to be mighty stupid.' He said: 'I will stand behind them. We will make them good. If they are not, you can bring them back and get your money.'" There are some exceptions to the general rule that a general warranty does not cover an obvious defect. Where the seller uses arts to conceal and succeeds in concealing such defects, or misrepresents their nature and effect, or where special skill, knowledge, or judgment is required to understand the effect of a disease or defect, or where the defect is visible, but the nature and effect thereof are not apparent to or understood by the purchaser, such defects are within a gen-

eral warranty.—35 Cyc., supra; *Hill v. North,* 34 Vt. 604, 615; *Jordan v. Foster;* 11 Ark. 139. The evidence in this case tended to show that the sellers were expert stockmen, familiar with the disease affecting the animal and its effect, and that it required skill to understand it and guard against its effect; and, on the other hand, if the plaintiff possessed any special knowledge or experience touching this disease, it is not made to appear. These considerations justify the refusal of charges 1 and 15.

(5-7) Under the evidence in the case, the nature and extent of the interest the several defendants had in the property and their relation to the sale and the warranties made, if any, was for the jury, and charges 2, 3, 6, 7, 8, and 9 were invasive of the province of the jury, and properly refused. The jury returned a verdict against all of the defendants, and therefore the refusal of charge 4 was innocuous. No such firm as the J. B. Brown Trading Company was sued, and charge 14 was, if otherwise correct, abstract.

(8) The statements, if any, made by the defendant pending the negotiation of the sale as to the mare's qualities and the locality from which the defendants had brought her was of the res gestæ, and tended to shed light on the conduct of the parties and their intention at the time of the sale, and the court did not err in admitting this evidence.

We find no error in the record, and the judgment is affirmed.

Affirmed.