ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

## AT THE

## MARCH TERM, 1916.

(*Continued from Volume 193*).

EL PASO MILLING COMPANY, Appellant, v. ER-NEST E. DAVIS, Respondent.

**Springfield Court of Appeals, May 22, 1916.**

1. **CONTRACTS: Pleadings: Express Contracts: Quantum Meruit.** Where a party sues, founding his petition solely upon an express contract, there can be no recovery on the *quantum meruit* nor, in fact, any recovery at all on such petition, unless he has established the fact that he has substantially performed the terms and conditions and requirements of the contract.

2. **SALES: Specific Contract of Sale: Acceptance of Goods: Breach of Warranty.** Plaintiff sold and delivered under an express contract a carload of onion crates to defendant who kept and used the major portion of same. In an action by the seller for the unpaid balance of the purchase price, the buyer cannot defend on the ground that the crates were defective and undersized. The vendee's remedy is to counterclaim on any alleged broken warranties and thereby reduce, if he can, the amount of the vendor's recovery on the contract.

3. ———: ———: **Breach of Warranty: Remedies of Buyer.** Defendant purchased by express contract a carload of onion crates from plaintiff paying the seller in full upon receipt. In case the

crates are defective or too small, the remedy of the buyer is either a suit on the covenant of warranty that the crates should be up to a certain standard or a tender back of the crates within a reasonable time and suit for the purchase money.

Appeal from Lawrence County Circuit Court.—*Hon. Carr McNatt*, Judge.

REVERSED AND REMANDED.

*J. V. McPherson* and *J. A. Potter* for appellant.

*McNatt & McNatt* for respondent.

FARRINGTON, J.—From a judgment entered in favor of the defendant in the circuit court the plaintiff appeals. The suit was brought for a balance alleged to be due on the purchase price of some onion crates sold by plaintiff to defendant. The cause of action is based upon an express contract. The petition alleges that plaintiff sold and delivered to defendant a carload of onion crates, 5000 in number, at and for the sum and price of $725, which sum and price defendant then and there agreed to pay. Defendant made several cash payments and returned 1500 crates to the plaintiff and plaintiff gave defendant credit for those returned at the rate of fourteen and one-half cents per crate. The total amount of credits, according to the statement filed with the petition, lacks $267.33 of paying the full contract price for the crates delivered to and used by the defendant, and it is for this balance that the plaintiff prays judgment.

The defendant answered by a general denial, and set up a counterclaim averring that he bought the crates as alleged in the petition, that they were to be standard both in material and construction and to hold a bushel of onions when properly packed, and that plaintiff failed to furnish a standard crate either in material, construction, or size, but on the contrary furnished the defendant a crate that was unsubstantial, of inferior material, and of unreasonably small size and would and did fall short of holding a bushel of onions by ten pounds; that when

the crates were received by defendant it was too late for him to get other crates, and that he did not discover the fact of the smallness of the crates until his crop of onions had been packed and shipped to the market; that it was necessary to have some of the crates reconstructed which were broken; that owing to the undersize of the crates his onions were unsalable on the market to the extent that he was required to accept a much less sum than he would have been required to accept for his onions had the crates been of the proper and standard size. The counterclaim prayed judgment for $500.

The plaintiff replied by specifically denying the allegations contained in defendant's counterclaim.

Plaintiff introduced a witness who swore that defendant had stated that the number charged and the crates mentioned in the statement attached to the petition were received and that he had used them with the exception of the ones he had returned and that he was entitled to a credit of 1500 instead of 1475 crates returned. Plaintiff offered in evidence Exhibit A, a statement showing a balance of $267.33, and with this rested.

Defendant's testimony tended to show that he purchased the crates from one of plaintiff's agents who exhibited to him a crate and represented that the crates which would be furnished under the contract would be similar to the sample, and that they would hold a bushel of onions and be of standard size; that when the crates came he found that some were damaged, which required that slats be nailed on them, the slats being furnished to defendant by plaintiff, and that to reconstruct the broken crates required him to expend $47. He further testified that he did not know that the crates which he used were undersize at the time he used them but discovered the same after the onions had been shipped and marketed and sold. He then measured some twenty-five of the crates which he had on hand unused and which were returned to the plaintiff and credited on defendant's account, and he says that these twenty-five crates all run short of a bushel of onions.or the required number of pounds that a regular and standard size crate would hold. The court permitted certain testimony to

be introduced on his claim for damages occasioned by the onions not selling as well in undersize crates, but this element of damage was withdrawn from the jury by an instruction which was given limiting the amount of the recovery of the defendant on his counterclaim to $47, the amount shown to have been expended by him in nailing and reconstructing the broken crates; any error, therefore, in the admission of this testimony for the purpose of proving the damages alleged in the counterclaim is in no way prejudicial to the plaintiff's rights.

The court refused a peremptory instruction for the plaintiff directing the jury to find for the plaintiff and refused to give an instruction asked by the plaintiff that defendant could not recover on his counterclaim.

The court did instruct that if the jury found for defendant on his counterclaim they could not find for a sum in excess of $47, the amount expended in repairing the crates, and instructed, at plaintiff's request, that they could allow nothing to defendant on his counterclaim by reason of the crates holding less than a bushel or fifty-seven pounds.

Over the objection of the plaintiff the court at the instance of the defendant gave the following instruction:

"A-1. The court instructs the jury that if you believe from the evidence in this case that as a part of the terms of the contract of sale of the crates mentioned in evidence, that plaintiff agreed by its agent that said crates would be of standard size, holding a bushel of onions, and would be made of material as good or better than what is known as the Cummer crate; that said crates were either not of standard size and holding a bushel of onions, or were not made out of material as good or better than the Cummer crate, then your verdict in this case should be for defendant on plaintiff's cause of action."

A further instruction directed the jury that if they found that the crates were undersize and failed to comply with the terms of the contract and that defendant was damaged thereby, they might allow defendant on his counterclaim a sum not exceeding $47.

The contest on this appeal centers about the giving of instruction A-1 which, in short, told the jury that if the plaintiff failed to establish by the evidence that it had furnished the kind of crate it had contracted to furnish, then the verdict must be for the defendant on plaintiff's cause of action.

The jury returned the following verdict: "We, the jury, find the issues for the defendant on plaintiff's cause of action." There was no finding on defendant's counterclaim.

To uphold the judgment the defendant insists that plaintiff's peremptory instruction was properly refused, that instruction A-1 above set out was properly given, and that as there was evidence from which the jury could find that the crates furnished were not of the construction and size specified in the contract the finding and judgment for defendant cannot now be disturbed. The principle of law relied on is that where a party sues, founding his petition solely upon an express contract, there can be no recovery on the *quantum meruit*, nor, in fact, any recovery at all on such a petition unless he has established the fact that he has substantially performed the terms and conditions and requirements of his contract. The cases cited by defendant in his brief, such as Halpin v. Manny, 33 Mo. App. 388; Eyerman v. Cemetery Assn., 61 Mo. 489; and West v. Freeman, 76 Mo. App. 96; and others, clearly sustain this view of the law.

It therefore becomes important to ascertain whether under the facts of this case it remained an open question for the jury to determine whether or not plaintiff fully performed its contract. If it is a question of fact, then clearly it was proper to give instruction A-1. If, on the other hand, the admitted facts show a complete performance on plaintiff's part, instruction A-1 was erroneous, and plaintiff's refused peremptory instruction directing the jury to find for plaintiff for the balance due on the purchase price should have been given, followed, of course, by proper instructions on defendant's counterclaim for the breach of warranty.

Defendant's counterclaim and evidence conclusively show that he entered into the express contract set up in

plaintiff's petition, and that under that contract there was delivered by plaintiff and accepted by him the 5000 crates and that he kept and used 3500 of the crates in marketing his onions. Having accepted and used the crates tendered him under the contract, can he now take the position that plaintiff did not perform the contract of sale? We think not, and feel supported in our view of the case on reason and justice as well as the express rulings on the question by our Supreme Court and Courts of Appeals.

The question, again stated, is—Do the facts of this case conclusively show that plaintiff performed its contract? or, putting it another way—Has not the defendant by his acts and conduct estopped himself from defending on the ground of nonperformance of the contract?

It is held in this State in the very early case of Yeats v. Ballentine, 56 Mo. 530, that where work and labor and materials have been expended in the production of an article not connected in any way with property belonging to the party at whose instance the work has been done, the latter is at liberty to accept it or not, and if he does accept, such acceptance is a waiver of any defense to the contract, based upon any defects in its performance. See also, Thompson & Sowers v. Allsman, 7 Mo. 530, an action brought both on express contract and on the *quantum meruit*, wherein the court finds that if there was a waiver of the contract a recovery could be held on the special count. It is said in Fairbanks, Morse & Co. v. Mining & Mfg. Co., 105 Mo. App. l. c. 653, 80 S. W. 13: "The objection, that the petition does not allege that plaintiff delivered to defendant scales of the best grade, durable and a perfect weighing machine, was aided by the allegation of the petition, that defendant received and accepted the scales. This allegation (that defendant received and accepted the scales) carried with it the implication that the scales were of the kind and quality warranted, as proof that defendant did receive and accept the scales would cast a burden upon it to show a breach of the warranty, in respect to the kind and quality of the scales," citing Branson v. Tur-

ner, 77 Mo. 489, and Calhoun v. Paule, 26 Mo. App. 1. c. 282. In Calhoun v. Paule, just referred to, a well considered case dealing with the question before us, it is held that where the vendor offered an engine to the vendee, which the latter refused to accept, such vendor must show that the engine he offered the vendee met the warranty, and on page 286 we find the following declaration of the law: "The defendant, therefore, had the right, in the state of the law, either to accept the engine, pay for it, according to the contract, and then sue the plaintiffs for the damages which he had sustained by their breach of warranty (Martin v. Maxwell, 18 Mo. App. 176, 180), or to rescind the contract, and return the engine, within a reasonable time." [See, also, Branson v. Turner, 77 Mo. 1. c. 494.] And in Berthold v. St. Louis El. Con. Co., 165 Mo. 1. c. 304, 65 S. W. 784, we find this expression of the court: "The defendants having received and accepted these poles under the contract could not, with any consistency, insist that they were not worth the contract price, and that they could retain them without paying for them" [See, also: Armstrong, Gilbert & Co. v. The Johnson Tobacco Co., 41 Mo. App. 254; Brown v. Weldon, 99 Mo. 564, 13 S. W. 342; St. Louis Brewing Assn. v. McEnroe, 80 Mo. App. 429; Excelsior Stove Mfg. Co. v. Million, 174 Mo. App. 718, 161 S. W. 298; Heimann v. Hatcher Merc. Co., 106 Mo. App. 1. c. 440, 80 S. W. 729; Sinnamon v. Moore, 161 Mo. App. 1. c. 177, 142 S. W. 494; 2 Mechem on Sales, sec. 1395, p. 1212, where this language appears: "The express warranty survives acceptance, and, by the great weight of authority, gives the buyer a remedy notwithstanding the defects were visible or open to discovery at the time they were received. The buyer may reject them, but he is not compelled to do so; he may retain them and rely upon the warranty."]

We may therefore deduce the rule from the foregoing authorities that where a vendor sells chattels under an express contract which do not become attached, in the nature of the undertaking, to any of the vendee's property, and the vendee accepts them and uses them and thereby fails to rescind in a reasonable time and re-

turn, then in a suit by the vendor brought to collect the contract price, based on the express contract, the vendee will not be heard to defend on a failure to perform the contract; the vendee's remedy under such circumstances is to counterclaim on the independent warranties and thereby reduce, if he can, the amount of the vendor's recovery on the contract.

Suppose defendant had paid the plaintiff in full for the crates on receipt of the same, then defendant's cause of action would have been a suit on the covenant of warranty, or a tender back of the property within a reasonable time and a suit for the purchase money by reason of the breach of warranty, and this, because, so far as the plaintiff is concerned, it had completed and performed the contract of sale but had breached a covenant of warranty. Wherein, in principle, does that case differ from the one under consideration? The contract is completed by the plaintiff in the one case as much as in the other. Nothing remains to be done, so far as the sale is concerned, by either party except to pay the purchase price. By accepting and using the crates the defendant has limited his remedy to an action on the warranty contained in the contract.

The cases cited by defendant (respondent) are clearly distinguishable or inapplicable to this case. For example, we find that in the first case cited in respondent's brief (Halpin v. Manny, 33 Mo. App. 388), the article furnished was a furnace put in a house and there was no showing of an acceptance; indeed, the answer avers that defendant had given notice *to remove it,* which precludes the idea of defendant accepting and keeping it and then refusing to pay the purchase price. In West v. Freeman, 76 Mo. App. 96, the contract was for personal services, which for many reasons falls in a different class from chattels delivered under a contract of sale. The defendant could not return to plaintiff his efforts spent in her behalf. The case of Fritsch Foundry & Machine Co. v. Goodwin Mfg. Co., 100 Mo. App. 414, 74 S. W. 136, merely holds that when machinery which was placed on defendant's property was of value to defendant, although plaintiff had attempted to

recover on the express contract, and failed, he would not, because of such failure, be barred in a suit on the *quantum meruit.*

The question, in our case, is not whether a plaintiff may base his petition on an express contract and recover on the *quantum meruit,* but rather whether under the facts of this case it is conclusively shown that so far as this defendant is concerned the plaintiff did fully perform its express contract; and that being true, a recovery based on the express contract in no way conflicts with the rule relied upon by the respondent.

The judgment is reversed and the cause remanded to be proceeded with in the circuit court in conformity with the views herein expressed. *Robertson, P. J.,* and *Sturgis, J.,* concur.