ANNA M. ARNOLD, Respondent, *v.* NORFOLK AND NEW BRUNSWICK HOSIERY COMPANY, Appellant.

1. PATENTED INVENTION — CONTRACT FOR USE UNDER ROYALTY — CAPACITY OF PATENTED MACHINE — REPRESENTATIONS. In an action brought by the owner of certain patents for improvements in making knit underwear to recover royalties under a contract for the use of the patents made with the defendant, a corporation engaged in manufacturing such goods, which contract provided that the plaintiff should furnish the defendant with machines for doing the work, the defense was interposed that the contract should be annulled upon the ground that its execution was induced by misrepresentations of the inventor, as the plaintiff's agent, in reference to the capacity of the machines furnished by the plaintiff to operate with sufficient rapidity to make their use commercially profitable. The contract contained no guaranty or representation as to the capacity of the machines, and the evidence as to their capacity was conflicting. It appeared that the machines furnished by the plaintiff had been used by .the defendant for a considerable time before entering into the contract in suit; it was not found that any representation in reference thereto was false, and the defense was overruled. *Held,* proper; that the officers of the defendant, having tested and become fully informed with reference to the machines by using them before entering into the contract, must be deemed to have assumed the responsibility of the work becoming commercially profitable.

2. LIMITATIONS ON INVENTION — RISK OF INFRINGING OTHER PATENTS — WEIGHT OF EVIDENCE. The defense interposed also alleged misstatements by the inventor, as the agent of the plaintiff, in reference to the state of the art, and the concealment from the defendant of limitations on the invention covered by the contract and the risk of infringing other patents. The trial court found the facts against these allegations, and the findings were approved by the General Term. *Held,* that the findings had evidence to support them and that the testimony presented a question as to the weight of evidence, which was final in the General Term.

Reported below, 76 Hun, 15.

(Argued January 16, 1896; decided February 18, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 12, 1894, which affirmed a judgment in favor of plaintiff entered upon the decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter D. Edmonds* and *John Hunter, Jr.*, for appellant. The appellant is entitled to a new trial because of the error of the learned court below in refusing to find as matter of law that defendant was entitled to a rescission of the contract in suit on the sole ground that its execution of the same was procured or partly procured or induced by misstatements of facts made to the defendant corporation by the plaintiff's agent, and this irrespective of his fraudulent intent. (Story's Eq. Juris. § 193; *Elwell* v. *Chamberlin*, 31 N. Y. 611–619; *Mayer* v. *Dean*, 115 N. Y. 556; *Bennett* v. *Judson*, 21 N. Y. 238; *Sharp* v. *Mayor*, 40 Barb. 256; *Craig* v. *Ward*, 3 Keyes, 387, 393; *Oberlander* v. *Spiess*, 45 N. Y. 175; *Meyer* v. *Amidon*, 45 N. Y. 169; *Wakeman* v. *Dalley*, 51 N. Y. 27; *Atwood* v. *Clark*, 6 Cl. & Fin. 444.) The court below erred in finding that no false or fraudulent representations were made by plaintiff's agent respecting application for patent. (*Elwell* v. *Chamberlin*, 31 N. Y. 611; *Pollock* v. *Pollock*, 71 N. Y. 137; *Losh* v. *Hague*, 1 Webb P. C. 207; *Roberts* v. *Ryer*, 91 U. S. 150; *Brown* v. *Piper*, 91 U. S. 37; *P. R. R. Co.* v. *L. E. S. T. Co.*, 110 U. S. 490.) The finding of the trial court that the defendant made the contract with full knowledge of all the material facts relating to the condition of the patents is error, as there is no competent evidence to sustain it. (*Pollock* v. *Pollock*, 71 N. Y. 137; *N. L. Ins. Co.* v. *Minch*, 53 N. Y. 144; *M. Nat. Bank* v. *Clark*, 139 N. Y. 314; *Innerarity* v. *M. N. Bank*, 139 Mass. 332; *President, etc.*, v. *Cornen*, 37 N. Y. 320; *F. Bank* v. *N. Y. & S. C. Co.*, 4 Paige, 127; *A. S. Bank* v. *Savery*, 82 N. Y. 291; *Trustees, etc.*, v. *Bowman*,

136 N. Y. 521 ; Angell & Ames on Corp. § 308 ; *Nat. Bank* v. *Norton,* 1 Hill, 572 ; *Village of Port Jervis* v. *F. N. Bank Pt. J.,* 96 N. Y. 550, 559 ; *Risley* v. *I., B. & W. R. Co.,* 1 Hun, 202 ; Taylor on Corp. § 266.)   The court erred in finding that the defendant did not rely upon the representations in the letter of November 3, 1881.   (*Pollock* v. *Pollock,* 71 N. Y. 137.) The court erred in refusing to find that House's patent, cited as a reference against Arnold in the " Two-Stitch " application, prior to November 3, 1881, was a material reference in that it presented so kindred a stitch and seam as substantially to deprive his claims of patentable novelty, and, consequently, of any substantial value in the matter of securing monopoly to the company.   (*Roberts* v. *Ryar,* 99 U. S. 150 ; *Brown* v. *Piper,* 91 U. S. 37 ; *P. R. R. Co.* v. *L. E. S. T. Co.,* 110 U. S. 490.)   The court erred in the findings respecting the machines made at the instance of the plaintiff.   (*Parker* v. *Moulton,* 114 Mass. 99 ; *Stewart* v. *Stearns,* 63 N. H. 99 ; *Burr* v. *Wilson,* 22 Minn. 206; *Bradbury* v. *Haines,* 60 N. H. 123 ; *Grant* v. *Shelton,* 3 B. Mon. 423 ; 1 Whart. on Cont. §§ 259, 260 ; *Hale* v. *Philbrick,* 42 Iowa, 81 ; 1 Bigelow on Fraud, 528 ; *Elkins* v. *Kenyon,* 34 Wis. 93 ; *Nelson* v. *Wood,* 62 Ala. 175 ; *Taber* v. *Peters,* 74 Ala. 90 ; 1 Pars. on Cont. 580 ; *Gatty* v. *Holcomb,* 44 Ark. 216 ; Benj. on Sales, § 453 ; *Chrysler* v. *Canaday,* 90 N. Y. 272 ; Cooley on Torts, 484 ; *Powell* v. *Fletcher,* 45 N. Y. S. R. 294 ; *Hickey* v. *Morrell,* 102 N. Y. 454 ; *Elwell* v. *Chamberlin,* 31 N. Y. 611.)   The court erred in overruling the defendant's objections to the admission of evidence.   These objections were all made to questions of plaintiff's counsel addressed to her principal witness, Satterlee Arnold, and designed to induce oral testimony explanatory of and contradictory to the unambiguous meaning of the language of his letter of November 3, 1881.   (*Humphreys* v. *N. Y., L. E. & W. R. R. Co.,* 121 N. Y. 435, 444 ; *Field* v. *Munson,* 47 N. Y. 221–224 ; *W. Bank of B.* v. *Myles,* 73 N. Y. 335–340 ; *Thomas* v. *Scutt,* 127 N. Y. 133 ; *Case* v. *P. B. Co.,* 134 N. Y. 78–81 ; *Smith* v. *Crego,* 7 N. Y. Supp. 86.)   It was error to exclude testimony

tending to show the worthlessness of Arnold's goods. (*Nelson* v. *Wood*, 62 Ala. 175.) There has been no waiver, or *laches*, respecting misrepresentations concerning the machines. (*Rohrschneider* v. *K. L. Ins. Co.*, 76 N. Y. 219 ; *Trustees, etc.*, v. *Bowman*, 136 N. Y. 521–526 ; *Schiffer* v. *Dietz*, 83 N. Y. 300.) Rescission does not involve plaintiff's restitution. (1 Bigelow on Fraud, 430 ; *Noblett* v. *MacFarland*, 92 U. S. 101 ; *Veazie* v. *Williams*, 8 How. [U. S.] 134, 158 ; *Blake* v. *Morrell*, 21 Beav. 613.)

*Frank E. Blackwell* for respondent. The refusal to find as a matter of law that the license agreement should be canceled because its execution was procured or partly procured by misstatements of fact was proper. (*Hunter* v. *M. R. Co.*, 141 N. Y. 286 ; *Daniels* v. *Smith*, 130 N. Y. 697.) There was competent evidence to sustain the finding of the court that the defendant dealt with full knowledge. (*C. N. Bank* v. *Clark*, 139 N. Y. 313.) The court admitted conversations between Letson and Arnold up to the time of the execution of the contract. It was objected that Arnold could not testify to any such conversations, because Mr. Letson was dead. In no other way, of course, could Arnold have met the allegations of fraud, and, as he had no interest, he was a competent witness. Nothing else was offered or received, except conversations, and under the decisions they seemed to be competent. (*Wallace* v. *Straus*, 113 N. Y. 238, 241, 242 ; *Hobart* v. *Hobart*, 62 N. Y. 80 ; *Nearpass* v. *Gilman*, 104 N. Y. 506.)

HAIGHT, J. On the 10th day of April, 1882, the plaintiff, as party of the first part, entered into an agreement with the defendant as party of the second part, in and by the terms of which the plaintiff, as the owner of letters patent of the United States for an improvement in modes of uniting edges of knit goods number 104,532 and a device for securing knit fabrics while being cut and sewed, number 241,116, and a device for trimming fabrics, number 249,743, granted to the party of the second part the exclusive right for the United

States of America under each of the above-named letters patent and under any other patent which has been. or may hereafter during the continuance of this agreement be granted to the party of the first part, or to Satterlee Arnold, her husband, for any improvement or invention whatsoever appertaining to or useful in making what is known as "The Anchor Stitch Seam," or appertaining to "The Anchor Sewing Machine Trimming and Holding Device," in the manufacture of all kinds of knit shirts or drawers known as men's, women's and children's underwear. The agreement provides for a royalty to be paid to the party of the first part which the second party covenants and guarantees shall amount to an average sum of one thousand dollars per month from and after the first day of January, 1883; the party of the second part covenanting that so long as this agreement shall remain in force it will not contest the validity of any of the patents enumerated, or of the right of the plaintiff to such patents; and the party of the first part covenants and undertakes to warrant and defend the party of the second part against infringements by any person or persons whatsoever of any of the afore-mentioned patents or of any of the patents herein referred to and to furnish to the second party at a reasonable price such machines and appurtenances for the doing of the work as the party of the second part shall desire.

Three different actions were brought to recover royalties under this agreement, which were consolidated into one and tried upon a stipulation before the court without a jury. No question is raised with reference to the amount due and owing to the plaintiff under the contract. The defense is that the contract should be annulled upon the ground that its execution was induced by misstatements and misrepresentations made by the plaintiff's husband as her agent. First, with reference to the capacity of the machines furnished by the plaintiff to do the work for which they were designed, with sufficient rapidity to make their use commercially profitable; and, second, in making misstatements in reference to the state of the art and concealing from the defendant limitations on

the inventions covered by the contract, and the risks that it ran of infringing on other patents.

The defendant was a corporation, and for upwards of thirty years had been engaged in the manufacture and sale of woven or knit woolen underwear, having factories at New Brunswick, New Jersey, and Norfolk, Connecticut. Satterlee Arnold was an inventor and an expert in seams, sewing machines and patents, and had transferred to the plaintiff, his wife, all of his inventions and patents. At the time of making the contract in question the defendant company was producing two classes of goods, one known as "full fashion," in which each piece going to make up the garment was separately knit or shaped, with a selvage edge, which, when united by stitches, produced a seam which was weltless, having its two abutting edges lying in the same plane, neither overlapping the other, which, owing to the shape of the pieces, required the constant attention of an operator. The other class of goods produced were known as the circular or cut goods, in which the material was first woven or knit in tubular or circular form and then cut into shaped pieces required by the garment and finally united by sewing. The edges of the cut pieces were superimposed and united by overseaming through and over both edges. This resulted in leaving a considerable material beyond the seam, producing a welt which reduced the goods to a cheaper and lower grade than the full fashioned goods. This appears to have been the history of the art up to about 1880, at which time Arnold invented a seam which he called the anchor stitch seam, which was produced by bringing the cut edges of the goods into abutting contact while lying in the same plane, and then stitching back and forth over and under the line of abutting juncture with an anchor stitch, reaching farther into the body of the material, so as to confine the raw edges together and prevent raveling, and at the same time produced a weltless seam. At about this time he also invented a sewing machine designed to make the anchor stitch, so called, and subsequently he made applications to the patent office to have his inven-

tions patented. The first application is known as the two-stitch patent, and the other the three-stitch machine patent.

In the fall of 1880 the inventions of Arnold appear to have been called to the attention of the defendant, and from that time numerous interviews took place between Arnold and one Letson, the president of the defendant, in which, if Arnold's testimony is to be believed, he fully disclosed, as fully as he understood it, the state of the art up to that period, with a history of his patents and an account of his inventions, upon which he was seeking patents. Arnold first constructed and delivered to the defendant two machines, which were set up in the factory and used. Subsequently he constructed and delivered to the defendant other machines which were also set up and used. After the use of these machines for a number of months, a contract was entered into on the 25th day of November, 1881, between the parties hereto for the use of the inventions of Arnold by the defendant during the life of the patents for a royalty agreed upon, in which an option was given to the defendant by which it might surrender up all the machines and appurtenances furnished by Arnold, and thereby be relieved from all further obligations under the agreement. The machines furnished by Arnold were operated under that agreement, some of them having been operated over a year when that contract was superseded by the contract in question. One hundred machines were ordered by the defendant, and ninety were constructed by the plaintiff and delivered.

It will be observed in the first place that there is no guaranty or representation in the contract with reference to the capacity of the machines to work with sufficient rapidity to make their use commercially profitable, or that they would even make the stitch described in the invention. The evidence with reference to the working of the machines is conflicting. But it appears that fifty thousand dozens of garments were manufactured thereon ; that they were operated under the contract during the years 1882–3–4–5 and 6. In 1888–9 other machines were constructed by the plaintiff making a lock

stitch, and ten of such machines were delivered to the defend-
ant, who continued to operate them until 1891, about the time
of the commencement of this action.    These facts appear to
have had a controlling influence on the mind of the trial judge,
who could not well believe that the defendant was deceived in
reference to the character of the work or the capacity of the
machines after having had them on trial for so long a time
before entering into the contract; that the plaintiff had the
right to puff her inventions so long as no false statements were
made with reference thereto, and that any statement that was
made with reference to revolutionizing the trade was but the
expression of an opinion upon a subject of which the officers
of the defendant, with their vast experience in the business,
were more competent to judge.    In these views we must con-
cur.    The officers of the defendant having tested and become
fully informed with reference to the capacity of the machines,
must be deemed to have assumed the responsibility of the
work becoming commercially profitable.

Upon the question of the concealing from the defendant of
the limitations made upon the inventions, the case is more
intricate and difficult to comprehend.    But the facts, so far as
we have been able to gather them from the great mass of tes-
timony taken upon the trial, are substantially as follows : With
reference to the two-stitch application for a patent, the exam-
iners of the patent office had cited as a reference two patents
known as the Humphrey and House patents, but had allowed
the second claim made in the application, disallowing the first
and third claims.    The acting commissioner having the matter
before him had made a suggestion with reference to the third
claim, writing out what he thought it should be and what he
would allow were it properly before him.    An amendment
was accordingly made covering his suggestion.    But on final
review before the commissioner the decision of the examiners
was reversed in reference to the first claim and it was allowed,
the commissioner holding that neither of the patents cited had
any application to the invention under consideration ; but the
commissioner sustained the action of the examiners with refer-

ence to the third claim, which was designed to cover an article of manufacture, upon the ground that such a claim was not patentable. This decision was reached on the third day of November, 1881, and a patent number 278,484 was subsequently issued thereon. With reference to the three-stitch machine application, numerous patents were cited as reference, among which were the Banks and Warth patents upon which the plaintiff's claims were modified and limited and finally resulted in the allowance of certain of the claims on the 17th of November, 1882, upon which a patent was issued, number 278,486; and in addition thereto a patent was issued to the plaintiff upon a device for trimming and sewing fabrics, number 278,485. These three patents were assigned to the defendant under the terms of the contract. The chief misrepresentation relied upon by the defendant appears in the letter of Arnold to Letson, the defendant's president, under date of November 3d, 1881, which, so far as bears upon the question, is as follows:

" DEAR SIR — Mr. Ashwell called to see me this morning about the lease, saying there were some terms in the first lease you would like different and that there was one you preferred if it read right. I submit that it is your turn now to offer amendments or a new lease and then you can submit them and I will accept or make amendments. Of course you would send your reasons and objections if you offer amendments. Regarding the clause of infringements of patent, I have kept up a careful search to see if I was infringing any one and I do not know of any infringement so far, and the broad claims allowed me by the patent office attest that they have not even found a reference against me and they have been working a year at it; for if they had found a reference I surely would not have broad claims allowed me. Yet I cannot be positive that nothing will come up or if it does what the fight will be, but do feel satisfied with the patent which I expect will be issued this month, two of the claims having been allowed and the third claim virtually allowed, as the form of the claim was written by the assistant commissioner himself, and I am satis-

fied that this patent fully covers the invention and will pro-
tect the goods."

It is contended that the statement that they had not
found a reference against him was false, and that it misled
the defendant and induced the making of the contract in
question which they then had under advisement. But it
will be observed that in the contract there is incorporated a
provision to the effect that the plaintiff covenants and agrees
to warrant and defend the defendant against all infringe-
ments of any patents whatsoever, and that this expression in
the letter had reference to that clause in the contract. He
states with reference thereto that he had kept up a careful
search to see if he was infringing any one; that he knew of
no infringements, and that the broad claims allowed him by
the patent office "attest," as he expresses it, doubtless mean-
ing satisfied or showed, that they had not found a reference
against him. It is true that the patents referred to had been
cited by the examiners, but they had been held by the com-
missioner to have no application and consequently not to con-
stitute an infringement. So that at the time of writing there
was no reference standing against the two-stitch application.
There were numerous references made against the three-stitch
machine application, but that application had not as yet been
allowed, and the letter evidently intended no reference thereto,
and the trial court has so found. It has also found that there
were no false or fraudulent representations in fact made by the
plaintiff or her agent in respect to the condition of her patents,
applications for patents or inventions, or the patents, applica-
tions for patents or inventions of Satterlee Arnold, her hus-
band. This finding has been approved in the General Term.
It is supported by the testimony of Satterlee Arnold, who
states that he, from time to time, disclosed to Mr. Letson, the
president, the information he derived from Washington with
reference to his applications for patents; that he told him of
the Banks patent; of the claims that had been made with ref-
erence thereto; of what he had been advised by his attorneys,
and asked him to have the company's attorney examine

51

the matter and see whether there was a chance for infringement.    This Letson declined to do, evidently preferring to rely upon the guaranty of the plaintiff to warrant and defend his company against actions of that character.    The testimony of Arnold was controverted in many respects, but his credibility was for the trial court, and all questions with reference to the weight of evidence is final in the General Term. This court can only interfere upon questions of law, and in order to raise a question of law with reference to the facts the finding must be either against the undisputed testimony or without any testimony to support it.

We have examined the exceptions taken to the admission and rejection of evidence, but find nothing that requires a new trial.

No action so far has been brought charging the defendant with any infringement of patents.    Should such an action be brought the duty devolves upon the plaintiff to defend and protect the defendant.    In case she neglects or refuses to so do the law affords the defendant a suitable remedy.

It may be that the bargain is a hard one for the defendant. It evidently did not so consider it when the proposition was made by the plaintiff to be released from the contract so that she could license other parties to manufacture under her patents ; for at that time the defendant demanded as a condition for such release the sum of fifty thousand dollars.    The court, however, has no power to make contracts for parties or to relieve suitors because they have entered into hard bargains.

The judgment should be affirmed, with costs.

All concur, except BARTLETT, J., not sitting.

Judgment affirmed.