EMPIRE MFG. CO. v. MOERS et al.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

1. ESTOPPEL—PERSONS AFFECTED.
    An estoppel cannot be claimed in favor of persons who were not parties or privies to the transaction out of which the estoppel arose.

2. SAME—VENDOR AND PURCHASER.
    Where plaintiff purchased goods, and afterwards brought an action against the vendors to rescind the sale, on the ground of inferior quality of the goods, which action was compromised by plaintiff's retaining the goods, he is not thereby estopped from claiming title to the goods as to third persons, who attached them as the property of the vendors.

3. SALES—ACCEPTANCE—WHAT CONSTITUTES.
    Where a company purchased certain metal, and, finding it inferior, commenced an action to rescind the sale, which was compromised by one of its officers, the company keeping the metal, complaints by the company of such metal, and a statement of its disinclination to accept the same, do not show a nonacceptance.

4. SAME—USE OF PROPERTY AFTER KNOWLEDGE OF INFERIORITY.
    A company purchased metal, and, finding it inferior, wrote to the vendors to that effect, and proposed to send it back, but still continued to use it, until it had used more than half the metal, when the balance was attached by creditors of the vendors. *Held*, that the purchaser, by its use of the metal and failure to promptly send it back when its inferiority was discovered, had accepted it, and held the legal title thereto.

Appeal from trial term, Cayuga county.

Action by the Empire Manufacturing Company against Charles Z. Moers and another to recover for levying on plaintiff's property. Judgment was rendered for plaintiff, and defendants appealed. Affirmed.

Trial before the Cayuga trial term without a jury.  Plaintiff commenced an action against the sheriff of Cayuga county for acts done by him in virtue of an attachment and an execution issued upon a judgment in favor of the defendants in this action.  Subsequent to the commencement of this action the defendants were substituted in place of the sheriff as defendants in this action. The action is for conversion of a quantity of composition metal which was levied on in the city of Auburn, on an attachment against L. Tyler Pratt in favor of the defendants herein, while the composition metal was in the possession of the plaintiff, and subsequently the defendants herein recovered a judgment, and on that judgment an execution was issued against L. Tyler Pratt, and the sheriff levied upon the composition metal, and sold the same, and this action is to recover for the conversion of the same.  The principal question in the case is whether the metal was the property of the plaintiff at the time of the conversion, or whether the plaintiff was estopped from asserting title to the property in itself.  The value of the property alleged to have been converted was fixed by a stipulation, and the trial court ordered a recovery of the defendants in the sum of $580, with interest thereon from September 25, 1896 (the date of the conversion).  Judgment has been entered for that sum in favor of the plaintiff, with the costs of the action.  A general exception was filed to the decision made by the trial court, and an appeal has been taken to this court from the judgment entered upon the decision.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

E. C. Aiken, for appellants.

D. L. Hurlbut, for respondent.

HARDIN, P. J.   Plaintiff is a foreign corporation, wholly engaged in carrying on a manufacturing business in this state.   In the month of February, 1896, a negotiation was had between the plaintiff and Pratt, of Boston, for the purchase of a quantity of composition metal, and a purchase was consummated by telephone and letter, and the metal was shipped from Boston to the plaintiff, and reached the city of Auburn about March 2, 1896, the invoice having been transmitted on the 26th of February, for 25,338 pounds, at the agreed price of $1,900.35.   Immediately after the arrival of the composition the plaintiff discovered that it was "spongy and looked very black."   The plaintiff executed and delivered its promissory note to Pratt for $1,900 on the 29th of February, bearing date the 2d day of March. On the 10th of March the plaintiff commenced to use the metal, and continued its use every day until March 22d.   The plaintiff discovered that the metal would not make good castings, and was of an inferior quality, and wrote Pratt to that effect on the 13th of March; and again wrote to him on the 17th of March, stating that they had made a test of the metal, and found it poor quality, and proposed to send the metal back to him.   However, the plaintiff still continued to use it until the 22d of March as its own property.   The plaintiff made use of 14,569 pounds, using up all but 10,769 pounds.   The plaintiff alleges that it continued to use the metal after discovering that it was poor, "because they had no other metal, and did not want to close their foundry, and stop," and thereby sustain a heavy loss. On the 17th of March, 1896, Pratt made an assignment; and on the 21st of March, Mills, one of the officers of the plaintiff, was in Boston, and learned of Pratt's failure, and then commenced an action against Pratt and his assignee to restrain the transfer of the note given for

the metal, alleging that the metal was not of the quality purchased, and that the plaintiff had rescinded the sale, and offered to return the metal. Mills had not been in Auburn since March 11th, and did not know of the use of the metal by the plaintiff after that day, and did not discover that the metal had been continuously used by the plaintiff after the 11th of March until he returned from Boston. While Mills was in Boston he saw Mr. Champlin, assignee, and agreed upon terms of settlement of the Boston suit. On the 9th of May, 1896, Babson and Hamburger were appointed assignees in insolvency of Pratt, and on May 16th Babson settled the case with the plaintiff, agreeing to discontinue the Boston suit, and that the metal should remain the property of the plaintiff. On the 22d of May, the defendants in this action, having obtained an attachment in their action against Pratt, caused the sheriff to levy upon the metal as the property of Pratt. At the time the sheriff attempted to levy the attachment upon the property he was told that the metal belonged to the plaintiff, and he was forbidden to make a levy on the same. According to the terms of purchase, the plaintiff was bound to approve of the quality of the metal within a reasonable time after an opportunity to inspect the same, and, in case it found that the quality was not such as purchased, it was its right to then promptly rescind the sale, and return or offer to return the metal, or to retain the metal and use it as its own property. The evidence given at the trial warrants the conclusion that the plaintiff did not promptly, and within a reasonable time after discovering the alleged defects, repudiate the purchase. On the contrary, it affirmed the sale by continuing to use the property, and thus deprive itself of the power to make a rescission of the contract, and its attempt to do so by means of its suit in Boston was futile. In Brown v. Foster, 108 N. Y. 387, 15 N. E. 608, the general rule was stated to the effect "that one who seeks to reject an article as not in accordance with the contract must do nothing after he discovers its true condition inconsistent with the vendor's ownership of the property." That case was referred to in Chambers v. Lancaster, 3 App. Div. 217, 38 N. Y. Supp. 255, and it was said in the latter case:

"The use of the machines for the purpose of their business, after the trial had shown that they were defective, was a conclusive election to accept. In this respect the present case resembles closely that of Brown v. Foster, supra; and the decision in that case, that the plaintiff, by using a sawmill after knowledge that it failed to comply with the contract, had accepted it, and was precluded from subsequently returning it, controls the disposition of this case."

In Benj. Sales, § 703, it is said:

"When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them, for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by the buyer which he would have no right to do unless he were owner of the goods."

It is quite obvious from the evidence that, if the plaintiff had continued to prosecute the suit in Boston upon an assertion of a rescission of the contract of purchase, it would have failed in that action. It

had gone too far in the use and acceptance of the property to warrant it in maintaining an action for rescission of the contract. Nor can that action be regarded as an estoppel in favor of these defendants, as these defendants were not parties nor privies of the parties to the transaction out of which the estoppel is claimed to have arisen. The defendants were strangers to the contract of sale and to the action based by the plaintiff upon, or in repudiation of, that sale. Before the defendants had taken any action in the affairs of the plaintiff, they were informed by the plaintiff the truth in respect to the owner-ship of the property, and that the plaintiff claimed to be the owner of it, and that it forbid the defendants or their sheriff to interfere with it. The position taken by Mr. Mills in Boston, in bringing the suit against Pratt or his assignees, was not intended to influence the de-fendants in this action. In Machine Co. v. Farrington, 82 N. Y. 129, it was said:

"The mistake in stating the amount of Davis' indebtedness was not calcu-lated to mislead the defendant as to any matter disclosed to the agent. The fact that it did affect his conduct to his injury did not create an estoppel, unless the connection between the statement and the omission to obtain security were so proximately related that the agent knew, or ought to have known, that the defendant's conduct in that respect would naturally result from the state-ments made. This cannot be said in respect to the transaction in question."

And the rule as to estoppels was quoted in that case in the following language:

"Equitable estoppels are applied for the prevention of fraud, and are ordi-narily based upon some action or declaration of a party intended to influence the action of others, and which it would be inequitable to allow to be gainsaid or controverted, because acted upon, and loss would ensue if a different position should be taken,"

—Which doctrine was laid down and applied in Board v. Otis, 62 N. Y. 96, and quoted with approval.

The defendants here cannot have the benefit of any assertion in the Boston action, nor of any adjudication that might have been made in it. That action was ultimately dismissed, and the facts which are disclosed by the evidence here indicate that it could not have been maintained; and the rule laid down in Quinby v. Carhart, 133 N. Y. 579, 30 N. E. 972, applies. At page 582 the court said:

"The plaintiff cannot have the benefit of the adjudication in that action, as he was not a party thereto. The doctrine of the election of remedies does not apply, and as to the plaintiff the defendants are not estopped by their state-ments or action in the Charleston litigation. They may have taken a false position in that action. But there is no rule of law prohibiting them from taking what they claim to be the true position in this."

There is no evidence in the case to indicate that the plaintiff knew or intended that any one should act on the faith of the representations made by Mills in the Boston action.

In Maguire v. Selden, 103 N. Y. 642, 8 N. E. 517, it was said: "An estoppel may not be based upon statements made to a third person, and not made to be communicated to the one claiming the estoppel."

Of course, we are not considering the effect of the Boston suit as between the plaintiff here and Pratt or his assignees. We have a case where there was a prior election made by the plaintiff to accept the

property under the contract with Pratt, and that acceptance, coupled with the contract to purchase, vested complete title in the plaintiff to the property in question. In Kinney v. Kiernan, 49 N. Y. 164, it was said: "The institution by a party of a fruitless action, which he has not the right to maintain, will not preclude him from asserting the right he really possesses." The doctrine of that case was cited and applied in McNutt v. Hilkins, 80 Hun, 239, 29 N. Y. Supp. 1047. There is no allegation of any fraud or fraudulent practice in the contract of purchase made by the plaintiff. The complaints of the composition made in the early days of March, and a statement of disinclination to accept the same, do not, as matter of law, show a nonacceptance. In Brown v. Foster, supra, it was said: "The intent of the vendee in using the property, after discovery of defects, may be gathered from his acts as well as his words. * * *" And such acts may be taken as a substantial proof of an acceptance for use. We are of the opinion that the plaintiff was the owner of the property mentioned in the complaint and in the decision at the time the sheriff, the defendants' agent, converted the same, and that, therefore, the plaintiff was entitled to maintain the action for such conversion.

2. The plaintiff was carrying on the manufacturing business wholly within this state. In People v. Campbell, 144 N. Y. 171, 38 N. E. 991, it was said: "The plain object of the exemption of manufacturing corporations carrying on manufacturing within this state from taxation, by the act of 1880, was the encouragement of production, and it was assumed that the employment of capital and labor in the business of manufacture here was a just ground for the exemption." See People v. Roberts, 155 N. Y. 1, 49 N. E. 248. It was shown upon the trial, by the certificate of the comptroller, that "the Empire Manufacturing Company was entered as a corporation wholly engaged in manufacturing in the state of New York"; and the certificate concludes by saying, viz.: "And is therefore exempt from the provisions of chapter 240 of the Laws of 1895."

3. We have looked at the exceptions taken during the progress of the trial, and upon the adjourned day, and are of the opinion that they present no error, and that there was no abuse of discretion requiring us to interfere with the rulings made by the trial judge. We think the judgment should be sustained.

Judgment affirmed, with costs. All concur.