THE PEOPLE, PLAINTIFF AND APPELLEE, v. BLANDFORD,,
DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a
Prosecution for Involuntary Homicide.

No. 870.—Decided March 24, 1916.

PEDESTRIANS—ROADS OR HIGHWAYS.—A pedestrian has a right to any unoccupied
part of the road and ordinarily is not bound to keep a lookout to the rear,
although his duty may be changed if he is warned or advised of the approach
of a vehicle from behind.

EVIDENCE—DISTANCE—STATEMENT OF CASE—DOUBT AGAINST DEFENDANT.—When
a witness testifies that the distance at which the car stopped from the scene
of the accident was equal to or greater than the length of the courtroom
in which he was testifying, the court below can approximate that distance
and if the statement of the case does not show the length of the room, any
doubt must be considered against the defendant.

NEGLIGENCE—DEGREE OF NEGLIGENCE—INSTRUCTIONS.—In case of criminal negli-
gence the question of the degree of negligence is ordinarily left to a jury
under proper instructions.

ID.—PROXIMATE CAUSE.—Multiplying instances of possible negligence does not
relieve the Government from showing the proximate cause of the accident.

INVOLUNTARY HOMICIDE—PEDESTRIAN—GROSS NEGLIGENCE—CAUTION AND CIR-
CUMSPECTION.—According to the authorities any driver of a vehicle who
attempts to pass pedestrians on the highway at a high rate of speed and
without being sure that such pedestrians are conscious of the approach of
the vehicle, is guilty of gross negligence. He is proceeding without due
caution and circumspection. When a death is caused, reckless driving has
always been punished by the law of homicide.

ID.—LIABILITY—NATURAL CONSEQUENCES.—The law of homicide has always made
a defendant responsible for the necessary and probable consequences of
his act.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—When a motion for a
new trial is based on the offer of additional evidence of a crime which the
defendant was bound to have known in advance, it cannot be considered as
newly discovered evidence which the defendant could not have obtained by
reasonable diligence.

The facts are stated in the opinion.
*Mr. M. Rodríguez Serra* for the appellant.
*Mr. Salvador Mestre, fiscal,* for the appellee.
MR. JUSTICE WOLF delivered the opinion of the court.

The *carretera* of Porto Rico, the highway leading from
San Juan to its principal suburb of Santurce, has no side-
walks. It is apt to be crowded with vehicles and pedestrians

at any hour of the day, all of whom have an equal right to
the road and each of whom must respect the rights of the
others.    Pedestrians have a right to any unoccupied part
of the road.   *Luther* v. *State*, 98 N. E. 640, and authorities
collected therein;  *Hennessey* v. *Taylor* 189 Mass. 583, 3
L. R. A. (N. S.) 345;  Civil Code, sec. 327 *et seq.; Escriche
Diccionario de Legislación, Tomo Segundo,* 157 *et seq; Riepe*
v. *Elting,* 48 A. S. R. 361, and notes;  *Avegno* v. *Hart,* 25
La. Ann. 235, 13 A. R. 133, and note.   Such pedestrians are
not ordinarily bound to keep a lookout to the rear, although
their duties may be changed if they are warned or advised
of the approach of a vehicle from behind them.   *Hennessey*
v. *Taylor, supra;  Graham* v. *Evening Press Co.,* 135 Mich.
303;  37 Cyc. 273.

There was evidence in this case tending to show that on
December 23, 1912, Pablo de Jesús, Acacio Villanueva, lead-
ing a boy, and Francisco Pastrana, entered the *carretera*
from its north side with the intention of walking east thereon
and ultimately crossing to the road to Covadonga on the
south.   They were on the road somewhere between the school
and the building of the Young Men's Christian Association,
the exact spot not being clearly defined in the testimony.
Apparently they had not reached the car track which crosses
the road a little west of the latter building.   They walked
on the north side of the road in a line, Pastrana being on
the extreme left, Villanueva in the middle and de Jesús to
the right, but all of them being on the left side of the road
with ample space on the right.   Joseph J. Blandford and
his brother came out from San Juan in an automobile.   They
approached this group of men and the appellant, who was
driving, saw them in advance.   He did not sound his horn
or give any other kind of warning, at least not until it was
too late for the pedestrians, in the emergency, to decide which
was the best way to turn.   They were terrified by the sud-
den approach of the machine to the rear, accompanied by

a blast from a Klaxon horn, and jumped in a panic. De Jesús and Villanueva attempted to pass over to the right side, which de Jesús reached in safety, but Villanueva was caught by the machine and killed. De Jesús said that the automobile was going at a very rapid rate, that it stopped immediately but at some distance away (*bastante retirada*). He described the distance to be greater than the length of the court-room in which he was testifying, a distance which we may safely assume to be forty or fifty feet. The court below could approximate this distance and any doubt in this regard must, in this court, be taken against the defendant, as the statement of the case does not show the length of the room. Another Government witness testified that the speed was moderate. The appellant said he stopped within the length of his own machine and that he was going at the rate of eight or ten miles an hour. He testified to the panic caused by his coming and his theory of the case is that the accident would not have happened if at the last moment he had not sounded his Klaxon horn to warn a cart that was in advance of him. He thought it was the blowing of the horn that made the men jump, and, indeed, the *fiscal* of this court bases his theory of negligence entirely on the sudden sounding of the horn. If the defendant had been going at a moderate rate of speed, as he maintains, the sounding of a horn in an ordinary way to secure passage could hardly be the negligence for which a criminal liability would attach.

In cases of negligence, civil or criminal, the question of the degree of the negligence is ordinarily left to a jury under proper instructions of the court. The case here was tried by the court without a jury. There are no instructions in the record and apparently none were asked, so that we have no idea of the particular theory on which the defendant was found guilty and sentenced to three months' imprisonment. There is no opinion. Under the numerous decisions of this court the judgment is bound to stand in the absence of preju-

dice, or a like element, if there is sufficient evidence tending to justify the conviction. *People* v. *Sutton*, 17 P. R. R. 327, a case tried by the court without a jury, and authorities cited therein.

We put entirely aside the suggestions from the evidence that the appellant was not paying attention inasmuch as he was talking to his brother and that they were both interested in the load of things they were carrying in the *tonneau* of the car. There is no evidence that the accident occurred from a lack of attention to the road. Multiplying instances of possible negligence does not relieve the Government of showing a proximate cause. We feel bound, however, to affirm the judgment on other grounds.

The court was justified in finding from the evidence that the appellant was driving at a high and dangerous rate of speed. There is little or no direct evidence on the rate of speed, but the testimony of de Jesús, the panic produced and the distance at which the appellant stopped his machine after the accident, were all elements along, perhaps, with the gestures of the witnesses from which the court had a right to deduce that the appellant was traveling rapidly on the highway. We shall not at this time discuss how fast a machine may travel or when the act of traveling in violation of Insular laws and regulations would be *prima facie* evidence of negligence.

The reported cases of homicide due to negligently driving an automobile are not numerous. We shall refer to a few of them. *State of Connecticut* v. *Goetz*, 83 Conn. 437, 30 L. R. A. (N. S.) 458, was a case where the accused was driving or running down hill at some twenty miles an hour. He saw two women standing on the road and under the theory that they were waiting for a street car which he had just seen go by, attempted to pass them without reducing his speed. The two women, alarmed and confused by the rapidly approaching car and its varying head-lights, attempted

to cross the tracks. The defendant turned sharply to avoid them, but nevertheless struck and killed one of them. The court held that the defendant's action in driving his car so negligently and rapidly was a complete disregard of the rights of the people on the streets and the defendant was held guilty of manslaughter.

*State* v. *Campbell,* 74 Atl. 927, was another case where a defendant attempted to pass a person on the road without reducing his speed. The court in that case referred to the general law in criminal prosecutions that the negligence of the injured person makes no difference. There were some local statutes in regard to speed in both these Connecticut cases, but so far as these statutes affected the particular cases they were only declaratory of the general law. See also *People* v. *Barness,* 148 N. Y. 400; *People.* v. *Scanlon,* 132 App. Dec. 528; *State* v. *Setsor,* 119 Pac. 346. *State* v. *Wagner,* 86 Atl. 147, was a case where the speed of the driver of a machine caused a panic in the driver of a wagon, who in turn killed a foot passenger, and the court held the defendant responsible and criminally liable.

In Porto Rico we also have a local statute fixing the rate of speed and we think it is clear from the evidence that the defendant exceeded this rate of speed. However, we do not want to be understood as holding that the mere violation of a statute regulating speed would in itself constitute criminal negligence.

Section 203 of the Penal Code provides:

"Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

Under the authorities we feel bound to hold that any one who attempts to pass pedestrians on the highroad at a high

rate of speed and without being sure that such foot passengers are conscious of the approach of the machine, is guilty of gross negligence. He is proceeding without due caution and circumspection. When a death is caused, reckless driving has always been punished by the law of homicide.

From the evidence, as we have seen, the court had a right to infer that the appellant was driving at a dangerous rate of speed; dangerous in the sense of passing pedestrians not warned and liable to be alarmed. The blowing of the horn was merely the particular thing that made the pedestrians swerve from the course they were taking, but an approaching vehicle, some diversion among themselves, or some other reason might equally have caused them suddenly to cross in front of the machine. The assumption of the defendant seems to have been that merely because he was well to the right and saw the road clear before him, he was justified in passing pedestrians at a high rate of speed without further precaution. This is not the law. A driver of a machine must always have it under such control that he can avoid doing injury to people traveling on the road. He has no right to pass them at a dangerous rate of speed unless justified in believing that they are aware of his approach and are prepared to give him free passage. Any man has the right to walk on the *carretera* and a driver of an automobile who attempts to pass him must have reason to believe that the foot-passenger knows of the approach of the machine or that he has been duly warned. An automobile can work more injury than any other vehicle traveling on the road. It has a right to be there, but it must respect the rights of others.

It may seem a hardship that a defendant who was going entirely without malice and who had no conscious intention of injuring any one on the road should fall into the pains and penalties of the criminal law, but the law of manslaughter has always made a defendant responsible for the necessary and probable consequences of his acts. A man who recklessly

uses firearms or any other agency liable to produce death, no matter what his actual motive may be, will be presumed to have intended the natural consequence of his acts (*People* v. *Francis,* 19 P. R. R. 659; *Commonwealth* v. *Pierce,* 137 Mass. 178; *Luther* v. *State,* 98 N. E. 642, *supra; J. Aitken* v. *Holyoke St. Ry. Co.,* 184 Mass. 271; *State* v. *Justus,* 8 Pac. 342; *People* v. *Pearne,* 118 Cal. 154, 50 Pac. 376), although, of course, we do not want to be understood that an automobile is the same kind of dangerous instrumentality as a firearm.

We take it that the principal question raised in this case was the consideration of the evidence by the court below. The appellant, however, also complained of the failure of the court to grant a new trial. The motion was based on the offer of additional evidence consisting of an affidavit of defendant's brother who was with him at the time of the accident. Without going into all the technical reasons for denying this motion for a new trial, it must be evident that the desired testimony was of the kind that the defendant was bound to have known in advance. The absence of his brother might have been ground for the obtaining of a continuance in the court below at the time of the trial, but in no sense can it be considered newly discovered evidence which the defendant could not have obtained by reasonable diligence. Defendant was bound to know or find out the testimony that his brother could give. Moreover, we have examined the affidavit and find nothing therein that would in any likelihood affect the judgment of a trial court. The court duly considered the motion for a new trial and denied it.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.