### SCRIVEN et al. v. HECHT.

(Circuit Court of Appeals, Second Circuit. January 24, 1923.)

No. 48.

1. **Sales ⬳113—Buyer may rescind for any ground for which contracts usually may be rescinded.**

A buyer may rescind his contract to purchase and recover the consideration paid on any of the usual grounds for rescission of contracts generally.

2. **Sales ⬳121—Buyer cannot rescind under statute for breach of warranty after accepting goods with knowledge of breach.**

Where a buyer bases his right to rescind for breach of warranty on the Uniform Sales Act (Personal Property Law, § 150), as adopted by New York in which state the courts did not permit rescission for breach of warranty in the absence of statute, he cannot rescind in view of the express provision in subsection 3 of that section, if he accepted the goods knowing at the time of the breach of the warranty, in view of section 129.

3. **Sales ⬳121—Acceptance after opportunity to inspect bars rescission.**

Under the common law, if the buyer accepted the goods after he had examined them, or had an opportunity to examine them, he thereby estopped himself from rescinding the contract of sale.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Sales ⊚⟶178(4)—Exercise of ownership of goods is acceptance.**

The exercise of acts of ownership over the goods and making alterations, and especially subjecting them to processes of manufacture, are unmistakable acts of ownership without regard to the private intent which accompanied them, and constitute an acceptance of them.

**5. Sales ⊚⟶445(6)—Whether tests are necessary to determine compliance with warranty is question of fact.**

Whether tests by the buyer of the goods delivered which necessarily result in a destruction of part of the goods are necessary to enable the buyer to ascertain whether the goods comply with the warranty, so that the making of such tests is not an acceptance which precludes a subsequent rescission for breach of warranty, is a question of fact.

**6. Sales ⊚⟶121—Test of part of goods after rejection for breach of warranty waives rescission.**

Where the buyer unconditionally rejected the goods for breach of warranty under which they were sold, and so notified the seller, the subsequent use by him of a portion of the goods for a test to determine the quality was unnecessary to enable him to determine whether they complied with the warranty, and therefore the making of such test was an act of ownership of the goods which barred the rescission.

In Error to the District Court of the United States for the Southern District of New York.

Action by Charles Richard Scriven and others, copartners doing business under the firm name of Scriven Bros. & Co., against Meyer Hecht. Judgment for defendant, and plaintiffs bring error. Affirmed.

The plaintiffs in error, who were plaintiffs below, are hereinafter referred to as the plaintiffs; and the defendant in error, being defendant below, is hereinafter referred to as defendant.

The plaintiffs are aliens and subjects of Great Britain, and at the times hereinafter mentioned were copartners doing business under the firm name of Scriven Bros. & Co. in the city of London, England. They were dealers and factors in leather and hides, and so far as we are informed they are still in the business. The defendant is a citizen of the United States and a resident of the Southern district of New York.

It is alleged in the complaint that the defendant, in the year 1914, being in New York, and the plaintiffs in England, offered to sell to the plaintiffs by description, f. o. b. New York, 6,000 horse fronts and 5,000 horse hides, describing, representing, and warranting the same in a manner specifically set forth. It is also alleged that the plaintiffs relied on the skill and judgment of defendant in selecting the same, as they themselves would have no opportunity to inspect or see the goods before delivery and payment. It is then alleged that the plaintiffs, relying upon the said descriptions, representations, and warranties, and believing the same to be true, purchased the horse fronts and horse hides from defendant, and instructed him to ship the same to their order to the city of Hull, England; and prior to the arrival of the goods at Hull the plaintiffs paid him $52,371.25, that being the price previously agreed upon. Then it is alleged as follows:

"IX. That by reason of the foregoing facts, and of said breaches of contract by the defendant, and of the fact that said goods were not in conformity with said descriptions, representations, and warranties, plaintiffs have suffered damage to the extent of the sum paid by them to the defendant for said hides and fronts, as aforesaid, to wit, fifty-two thousand three hundred seventy-one and 25/100 ($52,371.25) dollars, plus special damage to the amount of seven thousand and eighty-four dollars ($7,084), aggregating fifty-nine thousand four hundred fifty-five and 25/100 dollars ($59,455.25), and leaving due to the plaintiff from the defendant, after applying thereon said sum of eight thousand four hundred thirty-two and 85/100 dollars ($8,432.85), net

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

balance of said proceeds of sale, the sum of fifty-one thousand and twenty-two and ⁴⁰/₁₀₀ dollars ($51,022.40), with interest."

The plaintiffs demanded judgment in the sum of $51,022.40, with interest thereon from the 24th and 27th days of March, 1914, together with the costs of the action.

Geller, Rolston & Blanc, of New York City (George S. Mittendorf and Beverly H. Becker, both of New York City, of counsel), for plaintiffs in error.

Engelhard, Pollak, Pitcher & Stern, of New York City (Walter H. Pollak, Carl S. Stern, and Ruth I. Wilson, all of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action was brought by the plaintiffs, who are English leather merchants in the city of London, to recover the sum of $51,022.40, with interest thereon, that being the consideration which they paid to the defendant under a contract of sale for the purchase of horse hides and horse fronts—he being a dealer in hides and carrying on business in the city of New York. The complaint alleges that, upon the arrival of the goods at Hull, in England, it was found that the hides did not fulfill the descriptions, representations, and warranties agreed upon, but were utterly inferior to the same in character, size, weight, kind, quality, and value, and that they were utterly unfit for the purposes required. The complaint alleges:

"Immediately upon ascertaining said facts, the plaintiffs rejected said hides and fronts, refused to accept the same, and so informed the defendant, and offered to return the same to the defendant, and demanded repayment of the sum paid by them to him therefor as aforesaid. The defendant refused to accept the goods, and refused to give the plaintiffs any instructions with regard to the disposition thereof, and refused to repay to the plaintiffs the money paid by them to him as aforesaid."

The testimony introduced by the plaintiffs shows that they had contracted to sell the hides to Thomas Holmes & Sons, Limited, tanners, who were to receive them from the steamer at Hull. The hides arrived at Hull about April 14, 1914. Almost immediately they were inspected by a member of the Holmes firm, and were rejected by that firm on the ground that they did not correspond with the terms of the contract as to their weight, size, quality, etc., and were in every respect inferior. The Holmes firm requested the plaintiffs to send some one to represent them to examine the hides. In response to such a request the plaintiffs sent their representative to make an inspection of the hides, an examination being made by him about April 30, 1914, and the plaintiffs agreed, after the inspection, that the goods did not correspond with the contract. On May 1, after two inspections of the hides, the plaintiffs cabled the defendant that a great mistake had been made, that none of the hides were best hides, and that "we refuse to accept cable what you wish done." Again on May 2d they cable:

"Awaiting reply to our telegram 30th, horse hides unless we have answer subject immediate answer by telegram shall reship, will draw on you sight draft."

An interchange of letters and cables followed, which it is immaterial to set forth. After rejection of the goods the plaintiffs assumed that the hides were at defendant's responsibility. On July 10th the plaintiffs cabled:

"Fronts and hides still lying your risk will you consent for us to tan a sample and if necessary shall we resell if so name your representative to be present."

The defendant gave no consent. The plaintiffs having rejected the goods as early as May 1, 1914, and repeatedly thereafter, subsequently assumed to perform certain acts respecting the hides which the defendant claims amounted to acts of ownership and constituted as matter of law an acceptance of the goods. The acts relied upon are the following:

(1) About July 14, 1914, the plaintiffs sent 295 bundles of the hides and fronts to Schmell Fils & Co., in New York, subject to the direction of the plaintiff's lawyers in that city, for the purpose of obtaining an American expert opinion concerning them.

(2) Later the plaintiffs delivered an additional 150 hides and fronts to Thomas Holmes & Sons, Limited, to be tanned. This was done the plaintiffs said because they wanted "to test the hides and ascertain how they came out after being tanned."

The defendant insists that the above acts were unequivocal acts of ownership, which as matter of law constituted an acceptance of the whole shipment, and that these acts justified the court below in dismissing the complaint at the close of the plaintiff's case.

[1] In a contract of sale it is, of course, unquestioned law that a purchaser may rescind the contract and recover the consideration paid upon any of the usual grounds for the rescission of contracts generally. But the authorities have not only been in conflict, but are about equally divided (Williston on Sales, p. 1011), as to whether, in the absence of a statute, a breach of warranty entitles a vendee to rescind an executed contract of sale in the absence of fraud and where a right to rescind has not been reserved. That a breach of warranty is not a ground for rescission, see Street v. Blay, 2 B. & Ad. 456; Thornton v. Wynn, 12 Wheat. 183, 6 L. Ed. 595; Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847; Lynch v. Curfman, 65 Minn. 170, 68 N. W. 5; Freyman v. Knecht, 78 Pa. 141; Owens v. Sturges, 67 Ill. 366; Woodruff v. Graddy, 91 Ga. 333, 17 S. E. 264, 44 Am. St. Rep. 33; Fairbank Canning Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372, 16 Am. St. Rep. 753; Day v. Pool, 52 N. Y. 416, 11 Am. Rep. 719; Worcester Mfg. Co. v. Waterbury Brass Co., 73 Conn. 554, 48 Atl. 422; Woodward v. Emmons, 61 N. J. Law 281, 39 Atl. 703; Matteson v. Holt, 45 Vt. 336; Hulet v. Achey, 39 Wash. 91, 80 Pac. 1105; H. W. Williams Transportation Line v. Darius Cole Transportation Line, 129 Mich. 209, 88 N. W. 473, 56 L. R. A. 939. That it is ground for rescission, see Gilmore v. Williams, 162 Mass. 351, 38 N. E. 976; Morse v. Brackett, 98 Mass. 209; Gale Mfg. Co. v. Stark, 45 Kan. 606, 26 Pac. 8, 23 Am. St. Rep. 739; Milliken v. Skillings, 89 Me. 180, 36 Atl. 77; Horner v. Parkhurst, 71 Md. 110, 17 Atl. 1027; Mundt v. Simpkins, 81 Neb. 1, 4, 115 N. W. 325, 129

Am. St. Rep. 670; Timken Carriage Co. v. Smith, 123 Iowa, 554, 99 N. W. 183; Bramson v. Turner, 77 Mo. 489; Pacific Guano Co. v. Mullen, 66 Ala. 582; Byers v. Chapin, 28 Ohio St. 300; Optenberg v. Skelton, 109 Wis. 241, 244, 85 N. W. 356; Canham v. Plano Mfg. Co., 3 N. D. 229, 55 N. W. 583.

The plaintiffs, however, rely in this case upon their right to rescind for breach of warranty upon the express provisions of the Personal Property Law of the state of New York. That state in 1911 adopted the Uniform Sales Act (Laws 1911, c. 571). The part of section 150 of that act, which is material to the point under consideration, may be found in the margin.[1]

It will be observed that the courts of New York hold that at common law a vendee cannot rescind an executed sale for breach of warranty. The Supreme Court of the United States holds to the same doctrine, and as the federal courts follow the law of the state jurisdictions and apply the federal rule only in the absence of a decision upon the subject in the courts of the state—see Williston on Sales, p. 1013, note 92—such right of rescission as the plaintiff possesses in this case is derived from the New York act.

[2] But while that act gives the buyer a right to rescind for a breach of warranty it expressly provides in subsection 3 that the buyer cannot rescind if he accepted the goods knowing at the time of the breach of the warranty. And the act carefully defines acceptance. In section 129 it provides:

"The buyer is deemed to have accepted the goods * * * when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller."

---

1 "*Remedies for Breach of Warranty.* 1. Where there is a breach of warranty by the seller, the buyer may, at his election,

"(a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price;

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"2. When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.

"3. Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"4. Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price. * * *"

And section 129 also provides:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

The act is explicit and unqualified in its statement that if the buyer, after he discovers defects in the goods, does any act inconsistent with the ownership of the seller, he is to be deemed to have accepted the goods.

[3] And under the common law, if the buyer accepted the goods after he had examined them, or had an opportunity to examine them, he thereby estopped himself from rescinding the contract of sale. Arnold v. Norfolk, etc., Hosiery Co., 148 N. Y. 392, 42 N. E. 980; Scranton v. Mechanics' Trading Co., 37 Conn. 130; Badger v. Whitcomb, 66 Vt. 125, 28 Atl. 877; Korbel v. Skocpol, 70 Neb. 45, 96 N. W. 1022.

[4] The exercise of acts of ownership over the goods is a manifestation of acceptance of them as is any use of the goods by the buyer in a manner proper only on the assumption that the buyer is owner. To make alterations in the goods is an exercise of dominion ordinarily inconsistent with anything but ownership. See Bascom v. Manufacturing Co., 182 Pa. 427, 38 Atl. 510. It has repeatedly been held that altering the nature of property, making changes in it, and especially subjecting it to processes of manufacture, are, without regard to the private intent which accompany them, unmistakable acts of ownership. Lillywhite v. Devereaux, 15 M. & W. 285; Frey Sheckler Co. v. Iowa Brick Co., 104 Iowa 494, 498, 73 N. W. 1051; Empire Mfg. Co. v. Moors, 27 App. Div. 464, 50 N. Y. Supp. 691; Dounce v. Dow, 64 N. Y. 411; Zipp Mfg. Co. v. Pastorino, 120 Wis. 176, 97 N. W. 904; Gerli & Co. v. Mistletoe Mills, 83 N. J. Law. 7, 84 Atl. 1065; Friedman v. Ettensen (N. Y. Sup.) 169 N. Y. Supp. 67. If a buyer does an act which is inconsistent with the seller's continued ownership, the law assumes ownership to be in the buyer.

In the instant case the defendant insists that in tanning 150 of the hides the plaintiffs exercised an act of ownership under the doctrine above referred to, and that they must be held as a matter of law to be estopped from thereafter asserting that they did not accept the goods, and thereby estop themselves from rescinding the contract. But the plaintiffs urge that in subjecting these hides to the process of tanning they were within their rights, and that their act was not inconsistent with the seller's continued ownership of the goods, inasmuch as a buyer is entitled to take some portion of the goods and subject them to a test even though the test involves a destruction of some of them—in cases where a test is necessary to determine whether the goods conform to the contract.

[5] It is no doubt true that a buyer has a right to make a test, if it is necessary that the test should be made. But, if the nature of the goods can be determined by inspection alone, the test is not necessary. And whether or not the test is necessary is always a question of fact.

In Williston on Sales, § 475, that writer correctly states the rule. He says:

"It is always a question of fact whether a test is necessary, and whether a reasonable quantity only of the goods was used in making the test. If the buyer goes beyond the necessities of the case, he thereby becomes owner of the goods, with all right of rejection lost."

[6] But the rule that the plaintiffs had, as buyers, a right to test the goods is inapplicable to the facts. The purpose of a test is to enable the buyers to determine whether to accept or reject the goods. The right to make the test is to be availed of, therefore, while the question as to the rejection of the goods is open, and not after it has been determined. In this case the goods had been absolutely rejected by the buyers in the most positive terms over and over again before the plaintiffs ordered some of the hides tanned. As this so-called test was made after rejection of the goods, and after the right of rescission had been exercised, the case falls within the doctrine of Cream City Glass Co. v. Friedlander, 84 Wis. 53, 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895, which appears to be a leading case on this subject. The facts in that case were as follows:

"Friedlander delivered to the Glass Company a little over 113,000 pounds of soda ash about December 13, 1890. The Glass Company paid the import duties, the freight, and the purchase price. On December 19th the Glass Company notified the defendant 'that we hereby rescind the sale, and hereby offer to return to you the said soda ash. We further notify you that said soda ash is now at our factory, subject to your order, and that we hereby demand immediate repayment to us of the purchase price paid by us therefor.'"

Some time in January or February the Glass Company made a practical test of the material, by using about 1,500 or 1,600 pounds, in one of its furnaces in an endeavor to make glass. The court said:

"Now in this case the plaintiff's officers determined at once, and upon inspection alone, that the material was unfit for their purposes, and so notified the defendant, and rejected the entire lot. They did not claim to need any test. They took their position definitely. After that act they could not deal with the property in any way inconsistent with the rejection, if they proposed to insist upon their right to reject. Churchill v. Price, 44 Wis. 540. They must do no act which they would have no right to do unless they were owners of the goods. Benj. Sales (6th Ed.) § 703. Under these rules it is evident the plaintiff had no right to use up a quantity of the material several weeks after the rejection. By the rejection it became defendant's property, if such rejection was rightful. Plaintiff had no right to use any part of it. It is claimed that the use was simply for the purpose of providing evidence of unfitness for the purpose of the trial of this case; but one has no right to use his opponent's property for the purpose of making evidence. The act was an unmistakable act of ownership, and entirely inconsistent with the claim that the material had been rejected and was owned by defendant."

The doctrine of the case of the Cream City Glass Company has since been adhered to in Wisconsin (Owens Co. v. Whitcomb, 165 Wis. 92, 96, 160 N. W. 161), and has been followed elsewhere (Wolf Co. v. Refrigerating Co., 252 Ill. 491, 502, 96 N. E. 1063, 50 L. R. A. [N. S.] 808; Faust v. Koers, 111 Mo. App. 560, 86 S. W. 278; Clothing Co. v. Singleton, 161 Mo. App. 366, 143 S. W. 529; Edwards v. Woolridge, 52 Tex. Civ. App. 512, 115 S. W. 920, 921).

The notice of rejection previously communicated to the sellers is

unavailing, having been waived by the use to which the buyer thereafter put some of the hides, a use which was inconsistent with ownership being made after the buyer had rejected the goods; and as there was no right to make the test after rejection there was no question in this case to be submitted to the jury as to whether a test was or was not necessary.

The fact, also relied upon, that the plaintiffs sent about 300 of the hides to New York 2½ months after they had rejected the goods, for the purpose of obtaining an expert opinion concerning them, needs no comment, in view of what has been already said.

Judgment affirmed.